RYAN v. RYAN.

Opinion delivered April 14, 1919.

1. WILLS—RULE IN SHELLEY'S CASE.—The rule in Shelley's case is one of law and not merely of construction, so that when words of limitation in a will bring a case within the rule, the intention of the testator is presumed to be in accordance with that which the law implies from the use of words having a fixed and definite meaning.

2. WILLS—CONSTRUCTION OF WORD "HEIRS."—Where the devisee under a will takes an estate of freehold, and in the same clause of the will an estate is limited, either mediately or immediately to his heirs, the word "heirs" is a word of limitation of the estate, and not a word of purchase.

3. WILLS—CONSTRUCTION—RULE IN SHELLEY'S CASE.—Where J. devised property to his wife during her life and then "to go to A., heir of J., and at his death to go to his heirs," and there are no qualifying or explanatory words repugnant to the acceptance of the word "heir" in its strict legal sense, which would embrace the whole line of heirs, A took a fee simple, according to the rule in Shelley's case.

Appeal from Greene Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

### STATEMENT OF FACTS.

Appellants brought this suit in the chancery court against appellees to enjoin them from tearing down and removing the houses on lots 6 and 7 in block 12, of West End Addition to the city of Paragould, Arkansas. The facts are as follows:

Appellee, A. A. Ryan, is a son and heir at law of John H. Ryan and appellee, M. A. Ryan, is his wife. Appellants are the minor children of A. A. Ryan. John H. Ryan made a will in which he devised all of his property to his children and heirs at law which are A. A. Ryan, N. C. Tedder, C. D. Bowlin, L. V. Dacus, V. L. Brust and Lucy Adams. So much of the will as is necessary to the decision of the issues involved in this appeal is as follows:

"Know all men by these presents, that I, John Ryan, being in sound mind and body and recognizing the certainty of death, and the uncertainty of life, being desirous of making my last will and testament. Now it is my will for Sarah Ryan, the wife, John Ryan, to have place that we are living on at present being this the ................ 1916. Described as follows, towit: Block 12, lots 6 and 7, in the city of Paragould, Arkansas, and six hundred dollars in money now at her death should any money be left after paying sixty-five dollars for a tombstone to be put to her

grave, then the balance to be divided between our children.

"Now after all of the above have been fulfilled then the above place, which is described as follows, towit:

"Block 12, lots 6 and 7, goes to A. A. Ryan, heir of John Ryan. I value this place that we are living on at present to be worth five hundred dollars more than any other places that I have got. J. H. Ryan.

"Now if Sarah Ryan is living on the place that we are living on at present, then the other heirs is to pay A. A. Ryan one dollar each, that is, N. C. Tedder, C. D. Bowlin, L. V. Dacus, V. L. Brust and Lucy Adams, per month for rent as long as she lives on the place, that is Sarah Ryan, the wife of John H. Ryan, then at Sarah Ryan's death, then this place that is described as follows, towit: Block 12, lots 6 and 7, in the city of Paragould, go to A. A. Ryan, heir of J. H. Ryan, and at his death goes to his heirs. Now it is my will for all that I have written to go just as I have said."

The land described in the will is the land involved in this controversy. John H. Ryan died, and his will was duly probated. The widow and devisees and heirs at law of John H. Ryan, deceased, conveyed by deed the property in controversy to A. A. Ryan and the latter entered into the possession of it. A. A. Ryan claims that under the terms of the will he has a fee simple title to the property in controversy. His children claim that he has only a life estate in it. Hence this lawsuit.

The decision of the chancellor was in favor of appellees and the case is here on appeal.

*Huddleston, Fuhr & Futrell,* for appellants.

1. A will is to be construed so as to carry out the intention of the testator unless that intention conflicts with some rule of law or is contrary to public policy.

2. Where an estate is limited to one person and immediately or mediately thereafter is given to the heirs of such person, the first person takes an estate in fee simple.

3. The word "heirs" shall not be construed as one of limitation in wills when it is clear from the intention of the testator that the term "heirs" was intended to be a word of purchase. The first proposition needs no citation of authorities. The second and third are sustained by Tiedeman on Real Prop., § 30; 13 Ark. 88.

It is apparent that the testator intended to give and that A. A. Ryan took a life estate and not the fee simple title to the lots. *Supra.*

HART, J., (after stating the facts). The only question presented by the appeal is as to the proper construction of the will set out in our statement of facts. It is shown in the proof that the property in controversy is that mentioned in the will. The particular clause of the will, the construction of which is involved, provides that the property in question should be given to Sarah Ryan, the wife of John H. Ryan, the testator, during her life and then to "go to A. A. Ryan, heir of J. H. Ryan, and at his death go to his heirs."

The decision of the chancellor was based upon the theory that the language of the will calls for the application of the rule in Shelley's Case and therefore vests in A. A. Ryan an estate in fee simple.

In *Hardage* v. *Stroope,* 58 Ark. 303, the court held that under the section of our Digest adopting the common law of England, so far as applicable, the rule in Shelley's Case is in force in this State, except in so far as it has been repealed by the section abolishing fees tail. Judge BATTLE, who delivered the opinion of the court, quoted with approval Kent's abridgement of Mr. Preston's definition of the rule in Shelley's Case. It is as follows:

"When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to genera-

tion, the limitation to the heirs entitles the ancestor to the whole estate.''

In that case the court also held that in the application of the rule the presumption is, that the testator uses the word ''heir'' in its primary legal sense; that is as a word of limitation. Under this and subsequent decisions of our court it is settled that the rule in Shelley's Case is one of law and not merely one of construction. So when the words of the limitation bring a case within the rule, the intention of the testator is presumed to be in accordance with that which the law implies from the use of words having a fixed and definite meaning. The language used in the present case is within the very words of the rule, for where the devisee under the will takes an estate of freehold and in the same clause of the will an estate is limited, either mediately or immediately to his heirs the words, ''the heirs'' are words of limitation of the estate and not words of purchase. In the present case there are added no qualfying or explanatory words which are repugnant to the acceptance of the word ''heir'' in its strict legal sense. There are other clauses of the will in which the testator devises his property to his other children by name in which he calls them his heirs. In some of these provisions the devise is to the child by name with the added words ''heir of John Ryan.'' In others the devise is to the child by name with the added words ''heir of John Ryan and at her death it goes to her heirs.'' There is nothing in these added words or in the whole language of the will to show that the testator intended to use the word ''heir'' in its common or restricted sense to denote children and thereby form a root of a new succession instead of using the word in its primary legal sense which would embrace the whole line of heirs.

We think it is clear that the language used in the will brings the case within the operation of the rule in Shelley's case and that when so construed the will of J. H. Ryan gave the lots in controversy to A. A. Ryan in fee simple. See *Galloway* v. *Darby,* 105 Ark. 558.

The decision of the chancellor was therefore correct and will be affirmed.