ALEXANDER *v.* MORRIS & COMPANY.

Opinion delivered February 23, 1925.

1.  DEEDS—REPUGNANCE.—Where there is irreconcilable repugnance between the granting clause of a deed and the habendum, the latter must yield to the former, and is to that extent void.
2.  DEEDS—HABENDUM CLAUSE.—The purpose of the habendum clause in a deed is to define the extent of the grant, and it is controlling except where it conflicts with the granting clause.
3.  DEEDS—CONVEYANCE UPON LIMITATION.—A conveyance of lands to a lumber corporation, "its successors and assigns forever," which specified that the conveyance was for the purpose of the grantee cutting and removing the timber which required the grantee to pay the taxes as long as it should use the land, and provided for reversion to the grantors of all the lands except a small tract to be used for a mill site, as to which the fee simple title passed to the grantee, *held* to convey an estate upon limitation, to be determined on the removal of the timber or abandonment of same, and not a fee simple.

Appeal from Greene Crancery Court; *J. M. Futrell,* Chancellor; reversed.

*D. G. Beauchamp,* for appellant.

The deed under which appellee claims was nothing more than a timber deed. To ascertain the intention of the parties to a deed, it must be construed from its four corners. 129 Ark. 485; 140 Ark. 512. If the granting clause is so plain that it cannot be misunderstood, then there is no room for construction and other clauses must harmonize with this, or yield to it. 28 Ark. 285; 121 Ark. 95; See 26 S. E. 844; 93 Ark. 5. This case is distinguished from the one in 82 Ark. 209, as there the deed showed that it was the intent of the grantor to convey a fee simple title. See also the annotated case in Ann. Cas. 1917 B., p. 661.

*M. P. Huddleston,* for appellee.

Evidence was not admissible to explain, contravene or limit the terms of the deed. Where a case is tried without a jury, it is presumed that only competent evidence will be considered; hence it is not necessary to object to incompetent testimony. 99 Ark. 218; 76 Ark. 153; 92 Ark. 315; 97 Ark. 135. The reservations in the deed were personal to the grantors and good only during their life; they were not such covenants as pass with the title to the land to the heirs or legal representatives of the grantor. 88 Ark. 148; 38 Calif. 111; 100 Pa. St. 84; 70 N. Y. 419; 64 Ark. 339. Subsequent clauses repugnant to granting clause are void. 88 Ark. 209; 92 Ark. 324; 78 Ark. 230. See also the following cases, 94 Ark. 615; 131 Ark. 103; 135 Ark. 412; 117 Ark. 192; 121 Ark. 95. Courts will not disturb contractual relations or valuable rights resting upon the strength of decisions of courts of last resort, except from the most urgent considerations of public policy. 99 S. W. (Ky.) 311; 116 Pac. 426.

McCULLOCH, C. J. This litigation involves the construction of a deed of conveyance executed on January 2, 1901, by appellants to the National Box Company, appellee's grantor. It is the contention of appellee that, under a proper construction of the deed, it operated as

a conveyance of the lands therein described in fee simple to appellee's grantor, National Box Company, and this action was instituted in the chancery court of Greene County by appellee to have its title to the land confirmed. Appellants contend, on the other hand, that a proper construction of the deed is that it conveyed only the right to remove the timber on the land (except a small tract conveyed as a mill-site, which it is conceded passed to the grantee in fee simple) and that such rights have terminated by the removal of the timber. Appellants, in a cross-complaint, ask that their title be quieted. The deed, omitting formal parts, reads as follows:

"Know all men by these presents:

"That we, H. A. Amberg, L. P. Alexander, Scott Alexander, J. W. Alexander, R. L. Alexander and W. J. Slayden (the latter being a widower), composing the firm of Alexander, Amberg & Company; and Emma Amberg, wife of the said H. C. Amberg; Cretia Alexander, wife of the said L. P. Alexander; Maud Alexander, wife of the said Scott Alexander; Kate W. Alexander, wife of the said J. W. Alexander; and Mary I. Alexander, wife of the said R. L. Alexander, in consideration of the sum of eight thousand ($8,000) dollars to us cash in hand paid by the National Box Company, a corporation, of the State of Illinois, with its *situs* at Chicago, in the State of Illinois, the receipt of which is duly acknowledged, do hereby grant, bargain, sell and convey unto the said National Box Company and unto its successors and assigns, the following lands, together with all the riparian rights incident and appurtenant thereto, situate in the county of Greene, State of Arkansas, to-wit: (Then follows description of tracts of land containing in the aggregate 4,383.22 acres). Except the five following described meandered and measured tracts, namely (Here follows description).

"The above described five (5) tracts so excepted containing in the aggregate 2,896.79 acres.

"Also excepting ten acres at the county bridge on the east side of Bagwell's Lake, at the northwest corner

of section 16, township 17 north, range 7 east, and 70 acres in the southwest quarter of section ten, township 17 north, range 7 east, belonging to Livesay.

"Also excepting two acres of land in a square in the southeast corner of the northeast quarter of the southeast quarter of section 21, township 17 north, range seven (7) east, containing schoolhouse and grounds, reserving to ourselves the right of ingress and egress through and over said lands, perpetually, and also reserving the sassafras and mulberry, and sufficient cypress for necessary improvements to the lands above, to consist of bridges and house building, also the privilege of grazing, and fencing for that purpose, any parts of said lands any time we may so desire, and hereby granting to said grantee the right to them over such parts of our excepted tracts as may be convenient in pursuance of its business, provided the same shall be done in a reasonable manner so as to not substantially interfere with and injure said excepted tracts and our enjoyment thereof.

"It is the intention of this instrument to convey the grantee all the land unfit for cultivation on Bark Camp, Panther, and Boland's Islands owned by grantors, the inner boundaries of which have been meandered, measured and marked by a blaze with notch above on trees along the line, together with sufficient dry land for mill-site at east side of Bagwell's Lake, at crossing of P. S. E. R. R. and on the north side thereof, which said dry land is also without the meander line above given, and is conveyed subject to existing timber contracts.

"To have and to hold the same unto the said National Box Company and its sucessors and assigns in fee simple forever.

"And the said grantee, its successors and assigns, hereby convenant and agree to use said land, and the riparian rights appurtenant thereto, so hereinabove conveyed, for the purpose of cutting and removing the timber therefrom and conveying the same to and from the sawmill of said grantee (to be located and erected by

it upon a portion of said land hereinabove conveyed, containing about ten acres, and situate in the southeast quarter of section (29) twenty-nine aforesaid, at the east side of Bagwell's Lake, on the north side of the crossing of the Paragould Southeastern Railroad), and for said mill-site and grounds and for such other purposes as may be convenient and incidental to or beneficial for the purpose of said grantee's business; and said grantee, its successors and assigns, further covenant and agree to pay the taxes hereafter levied and assessed on the said lands so conveyed to it so long as it or they shall use, occupy and enjoy the same as hereinabove mentioned. Upon notice in writing of the election of said grantee, its successors and assigns, the said grantors, their heirs, legal representatives or assigns, to abandon any or all of said land (excepting the above described mill-site and grounds, which shall not in any event so revert), such lands or any part or parts thereof so abandoned shall thereupon revert to said grantors and their heirs.''

(Here follow covenants of warranty and relinquishment of dower in regular form.)

Evidence was introduced at the trial of the cause tending to show the construction placed upon the deed by the grantee subsequent to its execution, but we deem it unimportant to consider this testimony, for the reason that we conclude that the deed, when considered as a whole, is unambiguous, and that it must be interpreted according to its own language.

The chancery court decided that the deed operated as a conveyance of the title to the land in fee simple, and accordingly decreed in favor of appellee, quieting the title.

One of the rules often recognized by this court in the interpretation of deeds is that, following the rule of the common law, where there is an irreconcilable repugnance between the granting clause of a deed and the *habendum,* the latter must yield to the former, and is to that extent void. The purpose, however, of the *haben-*

*dum* is to define the extent of the grant, and it is controlling except where it conflicts with the granting clause. One of the comparatively recent cases on that subject, where former decisions were reviewed, is the case of *Stokes* v. *State,* 121 Ark. 95. We have a number of cases affording examples where the *habendum* is not found to be in conflict with the granting clause and is held to control the grant. *Whetstone* v. *Hunt,* 78 Ark. 230; *McDill* v. *Meyer,* 94 Ark. 615; *Dempsey* v. *Davis,* 98 Ark. 570; *State* v. *Stokes, supra.* We have held that reservations, conditions or limitations in the granting clause of a deed constitute a part of the grant and serve to limit it, and that such reservations, conditions or limitations which are not repugnant to the granting clause in a deed are equally effectual wherever they may appear in the deed. *Fletcher* v. *Lyon,* 93 Ark. 5; *Russell* v. *Pagan,* 167 Ark. 143.

In the case of *McDill* v. *Meyer, supra,* we construed a deed which, in the granting clause, purported to "bargain, sell, alien and convey" to the grantee, without the use of words of inheritance or other express grant of the title in fee simple, and there were restrictions and limitations in the *habendum* clause which we held not to be in conflict with the grant as expressed in the granting clause. In *Stokes* v. *State, supra,* there was substantially the same situation, and we held there that the limitation in the *habendum* clause controlled the grant.

We are of the opinion that these decisions control the present case, for an examination of the deed in question discloses the fact that, while there is used in the granting clause the words, "grant, bargain, sell and convey," which imply a conveyance in fee, yet there is no express grant of a fee, hence the limitation or reservation expressed in the *habendum* or other part of the deed is not in conflict with the grant and operates as a limitation upon the estate granted. Use of the word "successors" in a deed to a corporation takes the place of the word "heirs" in a deed to a natural person and implies

a grant in fee simple, but it is not an express grant to that extent so as to put the grant in conflict with words of limitation in the *habendum*. The use of the word "successors" is superfluous and adds nothing to the effect of a conveyance. 1 Tiffany on Real Property, p. 49. Nor does the use of the words "assigns forever" add anything to the effect of the grant. *Watson* v. *Wolf-Goldman Realty Co.,* 95 Ark. 18. When we come to examine the deed as a whole, it is plain that a conveyance of the fee was not intended. The first sentence or paragraph in the *habendum* declares a grant in fee simple, but this must be construed with the other parts of the clause which show the fee was not granted except as to the tract purchased for use as a mill-site. There is, in the first place, a stipulation as to the use to which the land is to be put, that is to say, "for the purpose of cutting and removing the timber therefrom and conveying the same to and from the sawmill of said grantee." There is a further covenant that the grantees should pay the taxes on the land, and a provision in express terms that the title should revert to the grantors and their heirs. There is no escape from the interpretation of this language that the title, except as to the particular tract expressly conveyed in fee simple for a mill-site, was to revert upon the removal of the timber, and the deed conferred upon the grantee the privilege of "reverting" the several tracts and thereby escaping the burden of paying taxes thereon as the timber should be removed therefrom. The deed conveyed more than the mere privilege of removing the timber—it conveyed the land itself, not in fee simple however, but upon limitation.

A conveyance upon limitation, that is to say, an estate to be determined upon the happening of a certain event or at the expiration of a certain time, is a character of estate recognized in the law. Tiedeman on Real Property, 4th ed., § 211; *Church* v. *Moses,* 69 Mass. 142; *Attorney General* v. *Merrimac Mfg. Co.,* 80 Mass. 586; *Henderson* v. *Hunt,* 59 Pa. St. 335.

Our conclusion is that the deed before us conveyed an estate upon limitation, and that, upon the happening of the event, namely, the removal of the timber, the estate terminated and reverted to the grantors or their heirs. Such being the case, the decree of the chancery court was erroneous, and the same is reversed, and the cause remanded with directions to enter a decree in favor of appellants in accordance with this opinion.

Smith, J., dissents.