WILSON v. PHARRIS.

4-6534                                      158 S. W. 2d 274

Opinion delivered December 15, 1941.

*Dewey Glass, John Mayes, G. T. Sullins, Earl Blansett* and *John W. Nance,* for appellant.

*Karl Greenhaw* and *Walter L. Combs,* for appellee.

SMITH, J. This appeal involves the construction of a deed from Nancy J. Pharris to Cora, her daughter, which reads as follows: "Know All Men By These Presents, That I, Nancy J. Pharris, a married woman, for and in consideration of the sum of one thousand dollars, to me paid by Cora Pharris, do hereby grant, bargain, sell and convey unto the said Cora Pharris, during her single and unmarried life, after the death of grantor, and unto her heirs the following lands situated in the county of Madison, and state of Arkansas, to-wit: It is hereby agreed by and between all parties herein named that said grantor is to have full control of said land during her life, after which time the said Cora

Pharris is to have said land during her single and un-married life, but should the said Cora Pharris marry, or at her death, the following land to revert to the said grantor's heirs: (Then followed the description of the lands.) To have and to hold the same unto the said Cora Pharris and unto her during her single life, after death of said grantor. And I hereby covenant with the said Cora Pharris that I will forever warrant and defend the title to the said land against all lawful claims whatsoever," dated December 28, 1914.

At the time of the execution of this deed, which conveyed all the land owned by the grantor, she was advanced in years. All of her children were of age and, except Cora, had married and had established separate homes of their own. Cora, who was unmarried resided, with her mother, on the land, and continued to do so until she was married in 1922, at which time she removed from the land and established a home of her own. In 1923, Mrs. Pharris removed from the land to the home of Cora, and until her death in July, 1926, resided with Cora.

Mrs. Pharris' husband had died, and on November 1, 1920, she executed a second deed, which reads as follows: "Know All Men By These Presents, That I, Nancy J. Pharris, a single woman, for and in consideration of the sum of one dollar and other good considerations, to me paid by Cora Pharris, do hereby grant, bargain, sell and convey unto the said Cora Pharris, and unto her heirs and assigns forever, the following lands, lying in the county of Madison and the state of Arkansas, to-wit: (Then follows the description of the lands.) It is understood and agreed by and between the grantor and grantee herein that this deed is not to take effect until after the death of the grantor, and that this deed is made to supersede and take the place of a deed made by the grantor conveying said lands to the grantee herein, on the 28th day of December, 1914, and recorded in Record Book 49, at p. 67, of the records of Madison county, Arkansas. To have and to hold the same unto the said Cora Pharris and unto her heirs and assigns forever, with all appurtenances thereunto belonging. And I hereby covenant with the said Cora Pharris that I will forever warrant

and defend the title to the said lands against all lawful claims whatsoever.''

Cora, who had married Wilson, brought an *ex. parte* proceeding to quiet and confirm her title, which was converted into an adversary proceeding against the other heirs of Nancy J. Pharris, who filed answers denying that Cora was the sole owner of the land, and alleging that they were tenants in common with her. The court sustained the contention of the answering defendants, and ordered the sale of the land for partition, from which decree Mrs. Wilson has appealed.

The decision of this case turns, of course, upon the construction of the deeds above copied. In aid of the construction placed upon them by the trial court, or, rather, upon the first deed, as there is no dispute about the construction and effect of the second deed, parol testimony was offered to the effect that the word ''revert'' was used in this deed when the word ''remainder'' was intended. The testimony to support that contention is that Mrs. Pharris loved her children equally well, and intended to make no distinction between them, except to provide Cora a home after the death of the grantor as long as she remained unmarried.

If parol testimony were admissible to explain the grantor's intention—and we think it is not—it might then be said that no better evidence of the grantor's intention to discriminate between her children could be found than that evidenced by the second deed. But it is the first deed which we must construe to determine whether the court was correct in holding that the deed granted a conditional life estate to Cora, to be effective upon the death of the grantor, with the remainder over to the heirs of the grantor. It appears to be conceded, but, if not, the law is, that if the grantor reserved a reversionary interest, she could convey that interest; and she did so.

Section 5 of the chapter on Remainders in 23 R. C. L., p. 483, gives several definitions of ''Remainders,'' but it is stated that ''A more exact definition of the modern common law remainder is as follows: A remain-

der is an estate limited to take effect in possession immediately after the expiration of a prior estate created at the same time and by the same instrument.''

A ''Reversion'' is defined in the chapter on Reversions in 23 R. C. L., p. 1100, ''As the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him,'' and at § 3 of this chapter it is said: ''Unlike a remainder, which must be created by deed or devise, a reversion arises only by operation of law. At common law, if a man seized of an estate limits it to one for life, remainder to his own right heirs, they take not as remaindermen, but as reversioners; and it will be, moreover, competent for him, as being himself the reversioner, after making such a limitation, to grant away the reversion. The same result is reached when an ultimate remainder in fee is contingent. Until it vests there is a reversion in the grantor or devisor and his heirs.''

It is not thought that it would be helpful to review all the cases cited on briefs of opposing counsel which distinguish between remainders and reversions. There are, in addition, an almost infinite number of such cases, but a case much cited and exactly in point is that of *Akers* v. *Clark*, 184 Ill. 136, 56 N. E. 296, which is extensively annotated in 75 Am. St. Rep. 152. A headnote to that case reads as follows: ''A deed granting a life estate and containing the words 'and at her death to revert back to my heirs,' is the grant of a life estate only, and no remainder being created, the fee remains vested absolutely in the grantor, and upon the death of the life tenant, the property reverts to the grantor or his heirs. The grantor being a reversioner in point of time can dispose of the fee absolutely by will or by deed.''

There, the life tenant had died. Here, by marriage, the life estate terminated. In other respects the cases are identical. That opinion contains a quotation from Washburn on Real Property, p. 395, as follows: '' 'At common law, if a man seized of an estate limited it to one for life, remainder to his own right heirs, they would take not as remaindermen, but as reversioners; and it would

be, moreover, competent for him, as being himself the reversioner, after making such a limitation, to grant away the reversion'."

Another case exactly in point is that of *Alexander v. De Kermel*, 81 Ky. 345, in which case a headnote reads as follows: "A conveyance to one for life, and then to the grantor's heirs, creates a reversion in the grantor, and, upon the death of the life-tenant, the grantor may devise the estate as he pleases."

Here, Mrs. Pharris had the reversionary title, and she, by her second deed, conveyed the fee title to appellant, subject only to the reserved life estate of the grantor, which expired upon the grantor's death.

The cases chiefly relied upon by appellees for the affirmance of the decree here appealed from are *Shirey v. Clark*, 72 Ark. 539, 81 S. W. 1057, and *Adams v. Eagle*, 194 Ark. 171, 106 S. W. 2d 192.

In the Shirey case, A. W. Clark, the husband, conveyed to Emily Clark, his wife, "To have and to hold during her life or widowhood, in the event that she shall become the widow of the said A. W. Clark, and after her death or future marriage, then to the heirs of the said A. W. Clark by the said Emily Clark." It was held that this deed created a vested remainder in the children of Emily by A. W. begotten. But it would have been an entirely different case, and one like the instant case, if the deed, instead of reciting, "then to the heirs of said A. W. Clark by the said Emily Clark," had recited, "then to revert to my heirs," as does the deed in the instant case.

In the case of *Adams v. Eagle, supra,* the headnote reads as follows: "Under a will bequeathing to 'my beloved wife, for her use and benefit as long as she lives' certain land, and at her death the said lands to 'be equally divided in value between all my children' a life estate was created in the widow and a contingent remainder in the children so that upon the death of the life tenant, the children, if living, would take the remainder in fee, and could convey a fee simple title."

The word "remainder" was not used in the will, but it was susceptible of no other construction when construed in the light of § 1799, Pope's Digest, which abolished estate tail. It was there said (quoting from an earlier opinion) that "This court has often ruled that, where land is conveyed, or devised, to a person and the heirs of the body, children, or issue of such a person, such conveyance or devise creates an estate tail in the grantee or devisee, which, under our statute (§ 1499, Crawford & Moses' Digest) becomes an estate for life only in the grantee or devisee and a fee simple absolute in the person to whom the estate tail would first pass, according to the course of the common law, by virtue of such devise, grant or conveyance. (Citing authorities.)"

Having reached the conclusion that appellant acquired the fee title under the deed here in controversy, it is unnecessary to determine whether her adverse possession for many years has not also ripened into title.

The decree of the court below will, therefore, be reversed and the cause remanded with directions to enter a decree conforming to this opinion.

GREENHAW, J., non-participating.