REYNOLDS v. NICKS.

4-7087                                        172 S. W. 2d 239

Opinion delivered June 14, 1943.

*George H. Steimel* and *W. J. Schoonover,* for appellant.

*S. L. Richardson,* for appellee.

GRIFFIN SMITH, C. J. When Betty Blunt died intestate in 1937 she left two sons—Elmer and J. R. Reynolds —who were her only heirs. They are appellants here. Their mother, following the death of her husband, married D. W. Blunt, who died in 1906, five ·days after executing the will which is the subject-matter of this appeal.

William L. Blunt (D. W.'s brother) died intestate in 1929. His heirs were Addie Nicks and Harry Blunt. Harry, a son of William L., died in 1942. Appellee is a daughter of William L.

If the will of D. W. Blunt created a life estate in William L. as distinguished from a fee, appellee must prevail, and a contract entered into between William L. and Betty Blunt affecting real property devised by D. W. Blunt terminated with the death of the life tenant, notwithstanding a commitment by William L. to pay certain annual rents during the lifetime of Betty Blunt; hence, no charge could be made for the period from William L.'s death in 1929 until Betty's death in 1937. Two paragraphs of the will are controlling:

"Third.—I hereby give and bequeath to my beloved brother, William Blunt, [the real property described] [1] to have and to hold after my death as long as he may live; then it is my desire and will that said described and bequeathed lands descent and be retained by the Blunt heirs and the Blunt family and it is my will and desire that no part or parcel of any of my real estate will ever be sold or traded to a stranger.

"Fourth.—To my beloved wife, Betty Blunt, I hereby give and bequeath a life estate; provided, however, that she remain single and unmarried, in and to the [described property].[2] It is my will and desire that upon her death or marriage the above-described property is to pass to my brother, William Blunt, and to his heirs forever."

It is quite clear that the devisor (who was childless) intended to limit to life the estate given his brother, for he stipulated in language not susceptible of a different construction that William L. Blunt was "to have and to hold . . . as long as he may live." This was followed by the expression:—"Then it is my desire and will that [the lands] descend and be retained by the Blunt heirs and the Blunt family."

---

[1] South half of the southeast quarter section 30, township 20, range 3 east; also the north half of the southeast quarter section 30, township 20, north, range 3 east; also the southwest of the northeast section 30, township 20, north, range 3 east, and the fractional part of the northeast of northwest in section 30, township 20, range 3 east, all in Randolph County, Arkansas.

[2] Fractional Lots Eight (8), Nine (9) and Ten (10) in Fractional Block Four (4), all in King's Addition to the town of Biggers, Randolph County, Arkansas.

That provision of the will directing that no part of the real estate should ever be sold, or traded to a stranger, is void. Thompson on Wills, 2d ed., § 389. Following the grant "as long as he may live," the adverb "then" was used to denote *when* the fee should vest, such event being the death of the life tenant. Appellants are not of the family blood, nor was Betty Blunt.

True it is that if the devise had been "to William L. Blunt and his heirs," a fee simple estate would have vested in the first taker. The Rule in Shelly's Case would have been applicable. See *Ryan* v. *Ryan,* 138 Ark. 362, 211 S. W. 183. But here there is no such devise. On the contrary it is expressly stated that William L. is to hold "as long as he may live." There is no uncertainty in the purpose—no language which brings the will within the Rule. It is not necessary to presume that the testator's intention was in accordance with "that which the law implies from the use of words having a fixed and definite meaning."

Appellants argue that if it be assumed "Blunt heirs," or "Blunt family" meant William L. and his children, "to the exclusion of all others," it cannot be said with reasonable certainty that the devisor intended to restrict the right of William L. to alienate, but did not intend that the interdiction extend to others in the Blunt family to whom the property might descend; hence, by analogy, the conclusion reached by appellants is that if D. W. had known the law did not permit complete restraint upon alienation he would have vested the fee in the first taker.[3]

It is difficult to see how the testator could have more explicitly expressed his purpose to limit the devise to a life estate; and since no positive rule of law prevented the remainder from going to the testator's heirs, it follows that the decree was correct and must be affirmed.

---

[3] The contention is: . . . "reading all the language together, it is our opinion that the one provision would not have been made unless the testator thought legal effect could be given to the other, and it is difficult to believe that he intended to tie the hands of his brother, and at the same time provide that the fee go to a niece or nephew or both of them."