Babe FLETCHER et al *v.*
James HURDLE and Shirl HURDLE,
Individually and as Co-Executors

75-245                                    536 S.W. 2d 109

Opinion delivered May 3, 1976
[Rehearing denied June 1, 1976.]

*W. B. Howard,* for appellants.

*John R. Henry,* for appellees/cross-appellants.

*Barrett, Wheatley, Smith & Deacon,* for cross-appellee.

JOHN A. FOGLEMAN, Justice. This action originated as a suit in ejectment brought by Nash Fletcher, Gerald Fletcher, Bruce Fletcher, Rose Fletcher Crabtree and Joann Fletcher States against James Hurdle and Shirl Hurdle, the co-executors of the will of Betty Roach, deceased, and her only devisees. These defendants, appellees here, claimed title to the real property involved under their decedent's will. They asserted that she had title by the virtue of a warranty deed executed by Barbara Jean Stephens, the sister of the plaintiff-appellants. These parties, along with Barbara Jean Stephens, were heirs of Asbury Fletcher, who died intestate. The Asbury Fletcher heirs, who originated the suit, will hereafter be referred to as the plaintiff-appellants. Barbara Jean Stephens will be referred to as Barbara Jean. The appellees, who cross-appealed on the dismissal of a third party complaint against the executor of the estate of Barbara Jean will be referred to as the Hurdles.

Babe Fletcher, the brother of Asbury Fletcher, intervened, claiming that he was the owner of an undivided one-half interest in the lands in question in fee simple as a residual devisee under the will of I. N. Fletcher, deceased, the father of Asbury and Babe Fletcher. At the time of the trial, the plaintiff-appellants took the position that they were the owners in fee simple of an undivided five-twelfths interest in the land in question. On the basic issue the positions of the plaintiff-appellants and the intervenor-appellant are identical.

I. N. Fletcher was the common source of title claimed by all parties. He died on September 20, 1950. The issues turn upon the proper construction of his will and of a deed executed by the plaintiff-appellants to their sister Barbara Jean. The pertinent provisions of the will of I. N. Fletcher are:

> 3. I devise and bequeath to my granddaughter, Barbara Jean Fletcher, for and during her natural life, then to the heirs of her body, if any, and if not then to Asbury Fletcher, his heirs and assigns, the following described real estate situated in Craighead County, Arkansas to-wit: [describing the lands in controversy].

\*\*\*\*\*\*

> 7. After payment of all specific bequests and devises herein, I hereby devise and bequeath the entire residue of my estate, real, personal, or mixed to my two sons Asbury Fletcher and Babe Fletcher in equal parts.

Asbury Fletcher died October 11, 1956, leaving the plaintiff-appellants and Barbara Jean as his surviving heirs at law. Barbara Jean claimed title as an heir of her father Asbury Fletcher and by virtue of a quitclaim deed executed by the plaintiff-appellants on December 6, 1956. Barbara Jean died without issue in March of 1974, having conveyed the lands in controversy to Betty Roach by warranty deed dated September 12, 1968. The appellants contend that paragraph three of I. N. Fletcher's will created a life estate with alternative contingent remainders, so that the testator retained a divestible reversion which, when Barbara Jean died without having heirs of her body, but surviving her father Asbury, vested the fee title in the appellants by virtue of the residuary clause of I. N. Fletcher's will. On the other hand, the Hurdles contend that their title comes through Asbury Fletcher as a contingent remainderman under the will of I. N. Fletcher, but that his heirs took as remaindermen, and the interest of all the heirs merged in Barbara Jean through the quitclaim deed to her in December, 1956. That deed was entitled "Quitclaim Deed" and by it the plaintiff-appellants did thereby "grant, sell and quitclaim unto the said Barbara Jean . . . the following

lands," to wit:

> All of our interest and possibility of remainder by reason of the will of our Grandfather, recorded in Probate Record Book 1, at page 116, Records of Craighead County Lake City District, as to [the lands in controversy].

The appellees alleged, but did not prove, that at the time of the deed to Barbara Jean, her grantors knew that she was incapable of bearing children. Jury trial was waived and the cause was submitted to the court on the pleadings, stipulations of counsel and oral testimony. The circuit judge found that appellants had no interest in the land in controversy and dismissed the complaint and intervention. The judgment was based upon oral findings of the circuit judge. Among other things, he found that:

> I. N. Fletcher, by specifically listing and naming the subject property, attempting to convey it to his granddaughter Barbara Jean, for her life, then to her children, and if no children, to Asbury Fletcher and his heirs, did divest himself of the subject property to the heirs of Asbury Fletcher in fee, whether by a vested remainder or to the heirs of Asbury Fletcher, or his devisee, of the reversionary interest to the heirs of Asbury Fletcher. I. N. Fletcher intended to, and did, divest himself of the property by paragraph three of his will and the property did not constitute a part of the residual estate disposed of in paragraph seven.

We agree with appellants that the circuit court erred in treating paragraph three of the will as creating a vested remainder, either in Asbury Fletcher, who predeceased the life tenant, or in his heirs. Of course, the devise to Barbara Jean Fletcher for life, "then to the heirs of her body, if any," vested only a life estate in Barbara Jean, with remainder to the heirs of her body. Ark. Stat. Ann. § 50-405 (Repl. 1971). The words "if any," are certainly indicative that any remainder in the heirs of the body of Barbara Jean was contingent, if there could otherwise have been any doubt about the matter.

A remainder is contingent when the remainderman cannot be ascertained until the death of the life tenant and no title passes until the happing of the contingency, i.e., the death of the life tenant. *Eversmeyer* v. *McCollum,* 171 Ark. 117, 283 S.W. 379. Where the estate in remainder is limited to take effect either to a dubious or uncertain person or upon a dubious and uncertain event, the remainder is contingent. *Wallace* v. *Wallace,* 179 Ark. 30, 13 S.W. 2d 810. Where the right of the remainderman to succeed to the enjoyment of the estate depends upon some contingency which may never arise or where the person who is entitled to succeed to possession is not, and may never be, ascertained, or is not in being, the remainder is contingent. *Hurst* v. *Hilderbrandt,* 178 Ark. 337, 10 S.W. 2d 491; *Wise* v. *Craig,* 216 Ark. 144, 226 S.W. 2d 347. It is the uncertainty of the right of enjoyment and not the uncertainty of actual enjoyment that renders a remainder contingent. *National Bank of Commerce* v. *Ritter,* 181 Ark. 439, 26 S.W. 2d 113. Where the persons who may take under a will are uncertain and cannot be ascertained until the life tenant dies, the remainder is contingent. *National Bank of Commerce* v. *Ritter,* supra. See also, *Steele* v. *Robinson,* 221 Ark. 58, 251 S.W. 2d 1001 (overruling *Deener* v. *Watkins,* 191 Ark. 776, 87 S.W. 32, in *Hurst* v. *Hilderbrandt,* supra, viz:

The distinction between contingent and vested remainders is well made by a quotation from 23 RCL 500, § 32, in *Hurst* v. *Hilderbrandt,* supra, viz:

The fundamental distinction between the two kinds of remainders is that in the case of vested remainder, the right to the estate is fixed and certain, though the right to possession is deferred to some future period, while, in the case of a contingent remainder, the right to the estate as well as the right to the possession of such estate is not only deferred to a future period, but is dependent on the happening of some future contingency. The broad distinction between vested and contingent remainders is this: In the first there is some person in esse known and ascertained who, by the will or deed creating the estate, is to take and enjoy the estate, and whose right to such remainder no contingency can defeat. In the second it depends upon the happening of a contingent event,

whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the particular estate upon which it depended shall have been determined, so that the estate in remainder will never take effect.

That the remainder to the heirs of the body of Barbara Jean was contingent is beyond cavil. Appellees do not contend otherwise.

Turning then to the subsequent clause in paragraph three of the will, and applying the well-established rules of property distinguishing between vested and contingent remainders, we come to the inevitable conclusion that any remainder in Asbury Fletcher was a contingent remainder, because the remainder could not possibly have vested unless Barbara Jean predeceased him without having heirs of her body. Any estate in Asbury Fletcher was necessarily dependent upon the happening of this contingency. The remainder was obviously to a dubious or uncertain person or upon a dubious or uncertain event. The person or persons who might take under this clause of the will were uncertain and could not be ascertained until the death of the life tenant. If Barbara Jean had left an heir of her body, the remainder over would have been gone forever, insofar as Asbury Fletcher or his heirs are concerned. That contingency would have defeated any remainder in Asbury Fletcher and no estate would ever have vested in him. See *Hurst* v. *Hilderbrandt,* supra; *Wise* v. *Craig,* supra. In the absence of any showing to the contrary there is a presumption that a woman may have issue so long as life continues. *Wise* v. *Craig,* supra. Cf. *Steele* v. *Robinson,* supra; *Greer* v. *Parker,* 209 Ark. 553, 191 S.W. 2d 584. As previously pointed out, there was no evidence to indicate that Barbara Jean was incapable of bearing children.

If there were any lingering doubt about the contingency of the remainder to Asbury Fletcher, the use of the word "then" immediately following the creation of the life estate in Barbara Jean denotes the time the fee would vest, i.e., at the time of Barbara Jean's death. *Reynolds* v. *Nicks,* 205 Ark. 1046, 172 S.W. 2d 239. Where the interest of a remainderman is contingent upon his surviving the life tenant and he dies dur-

ing the continuance of the life estate, he takes no interest in the land under the remainder and no interest devolves upon his heirs. *Cox* v. *Danehower*, 211 Ark. 696, 202 S.W. 2d 200; *Wise* v. *Craig*, supra. It is clear that the interest of Asbury Fletcher was contingent upon his surviving Barbara Jean.

Appellees argue, however, that the contingent remainder to Asbury Fletcher descended to his heirs at law. In advancing this argument, they attempt to distinguish *Wise* v. *Craig*, supra. But the rules there announced clearly apply in this case. See also, *Cox* v. *Danehower*, supra.

Appellees seize upon 33 Am. Jur. 618, § 152, for a qualification of the general rule that a contingent remainder does not pass by descent. The application of the principle espoused by appellees depends, however, upon the certainty of the person who is to take and the lack of necessity for his surviving some particular time or event as a part of the contingency upon which the remainder is intended to take effect. It is unnecessary for us to pass on the validity of the rule for which appellees contend, because the clear language of the will required that Asbury Fletcher survive his daughter Barbara Jean before any estate vested in him. A contingent remainder can hardly become vested in a person who is not in being. The only way that any contrary intention could be found in this clause of the will would be by resort to an impermissible construction of the words "his heirs and assigns" following the naming of Asbury Fletcher. Of course, these words cannot be more than words of limitation. It is presumed that the word "heir" is used in its primary legal sense, i.e., as a word of limitation, in the absence of qualifying or explanatory words which are repugnant to the acceptance of the word in its strict legal sense. *Ryan* v. *Ryan*, 138 Ark. 262, 211 S.W. 183. In determining the intention of the testator, the question is not what the testator meant, but it is the meaning of his words. *Galloway* v. *Darby*, 105 Ark. 558, 151 S.W. 1014. The addition of the words, "and assigns," is merely declaratory of the power of alienation which the taker possesses without them and they cannot operate to enlarge the grant or defeat its express limitations. *Watson* v. *Wolff-Goldman*, 95 Ark. 18, 128 S.W. 581. See also, *Alexander* v. *Morris & Co.*, 168 Ark. 31, 270 S.W. 88. The words "heirs and assigns" are to be taken in their technical sense to denote

the character of the estate or the extent of the interest to be taken by a named devisee and, as such, are words of limitation, and cannot be words of substitution. *Galloway* v. *Darby,* supra. The rule in Shelley's case has such an impact in Arkansas that it is to be applied, regardless of the intention of a testator or grantor, who cannot disavow the rule, even in express words. *Bishop* v. *Williams,* 221 Ark. 617, 255 S.W. 2d 171. In other words, this language cannot be taken as a substitution of the heirs and assigns of Asbury Fletcher, for him, as a remainderman, if he should not be living at the time of the death of Barbara Jean without heirs of her body.

We find nothing in Ark. Stat. Ann. § 61-101 (1947)[1] to support the argument of appellees. The definition of real estate in Ark. Stat. Ann. § 61-120 (1947)[1] eliminates any such possibility. One cannot be "seized or possessed" of a contingent remainder as is required when those two sections are read together. Furthermore, Ark. Stat. Ann. § 61-137 (Repl. 1971) is inapplicable to this situation because it was not in effect at any time critical to the issues here.

The characterization of the interest remaining after the death of Barbara Jean and its disposition remain to be determined. It is quite clear that under Arkansas law a grant to one for life with remainder to the heirs of his body leaves a divestible reversion in the grantor, which would remain in him if the grantee should die without bodily heirs during the lifetime of the grantor. *Hutchison* v. *Sheppard,* 225 Ark. 14, 279 S.W. 2d 33; *Davis* v. *Davis,* 219 Ark. 623, 243 S.W. 739 (in which we corrected a misnomer of this reversion as a possibility of reverter in *LeSieur* v. *Spikes,* 117 Ark. 366, 175 S.W. 413).

But here we have alternative remainders. Alternative remainders, limited upon a single precedent estate, are always contingent. *Wise* v. *Craig,* supra; *Cox* v. *Danehower,* supra. It would be helpful to examine the nature of a reversion, as distinguished from a remainder, and to consider the effect of the failure of alternative contingent remainders. The distinction was clearly made in *Wilson* v. *Pharris,* 203 Ark. 614, 158 S.W. 2d 274. There we pointed out that a remainder

---

[1]Now repealed.

is an estate limited to take effect in possession immediately after the expiration of a prior estate created at the same time and by the same instrument. We also pointed out that a reversion is the residue of an estate left in the grantor to commence in possession after the determination of some particular estate granted out by him and that, unlike a remainder, which must be created by deed or devise, a reversion arises only by operation of law. Furthermore, in quoting from 23 RCL p. 111, Reversions, we said:

> . . . At common law, if a man seised of an estate limits it to one for life, remainder to his own right heirs, they take not as remaindermen, but as reversioners; and it will be, moreover, competent for him, as being himself the reversioner, after making such a limitation, to grant away the reversion. The same result is reached when an ultimate remainder in fee is contingent. Until it vests there is a reversion in the grantor or devisor and his heirs.

By application of the rules of property hereinabove set out, I. N. Fletcher created a life estate in Barbara Jean, alternative contingent remainders to the heirs of the body of Barbara Jean and Asbury Fletcher and left in himself a reversion. Such a reversion is divestible and may pass by deed or inheritance and, in the absence of a grant by deed in the lifetime of the creator, it will pass by will, and in the absence of a specific devise, will pass under the residuary clause of the will of the holder of the reversion. *Wilson v. Pharris,* supra. *Luster v. Arnold,* 249 Ark. 152, 458 S.W. 2d 414; *Hutchison v. Sheppard,* supra; *Davis v. Davis,* supra; *Nuckolls v. Mantooth,* 234 Ark. 64, 350 S.W. 2d 512; Core, Transmissibility of Certain Contingent Future Interests, 5 Ark. Law Rev. 111, 125' (1951). Thus, the reversionary interest in I. N. Fletcher passed under the residuary clause in the will to Babe Fletcher and Asbury Fletcher. This made Babe Fletcher the holder of an undivided one-half interest in fee upon the death of Barbara Jean. Consequently, the holding of the circuit court was erroneous as to him.

The reversionary interest in I. N. Fletcher could not possibly have passed to Asbury Fletcher under paragraph

three of the will because to so hold would mean that no remainder, contingent or otherwise, was created in Asbury Fletcher by paragraph three. The basis of the trial court's holding in this respect was that, by making the devise to Asbury Fletcher and his heirs, the testator divested himself of the property to the heirs of Asbury Fletcher in fee, regardless of whether the interest was a vested remainder or a reversionary interest. The fallacy of this holding has been pointed out in our treatment of the signficance of the word "heirs" in paragraph three.

We cannot agree, however, that the plaintiff-appellants are not bound by their quitclaim deed to their sister Barbara Jean. It is true that ordinarily a contingent remainder cannot be conveyed by deed. *Hurst* v. *Hilderbrandt,* supra; *National Bank of Commerce* v. *Ritter,* supra. But see, *Clark* v. *Rutherford,* 227 Ark. 270, 298 S.W. 2d 327. On the other hand, the conveyance by the plaintiff-appellants of all their interest as to the property would carry the reversionary interest, even if they didn't realize they had it. *Nuckolls* v. *Mantooth,* supra; Core, Transmissibility of Certain Contingent Future Interests, 5 Ark. Law Rev. 111, 121. Although we would agree that the interest passed to the plaintiff-appellants by descent from Asbury Fletcher, we do not agree with these appellants that the words "by reason of the will of our grandfather" limit the words "all of our interest." The limitation is upon the possibility of remainder. This divestible reversion was a present and not a prospective interest held by the plaintiff-appellants. So even if the limitation is upon "our interest," the result is the same. In this respect, the holding of the circuit judge was correct, and his judgment should be affirmed to that extent.

This brings us to the cross-appeal. Appellees filed a third party complaint against the executor of the estate of Barbara Jean. This pleading was authorized by order of the circuit court. In it the appellees alleged that the property was conveyed to their decedent by general warranty deed dated September 12, 1968, executed by Barbara Jean and that if appellees should be evicted and ousted from the property or any part thereof, the eviction would be a breach of the covenants of warranty in that deed, that the third party defen-

dants had taken no action to defend the suit and that, if evicted, they were entitled to recover from the third party defendant either the consideration of $30,000 given for that deed for breach of warranty or a fraction thereof proportionate to the value of the property from which they were evicted and ousted.

The circuit court dismissed that third party complaint and, properly so, upon the court's holding on the other points. In view of the disposition we make of the case on direct appeal, this part of the judgment must be reversed on cross-appeal. The cause of action of appellants did not accrue until the death of Barbara Jean. *Luster* v. *Arnold,* supra. It is true that a covenant of warranty is not broken until eviction, but a constructive eviction is sufficient, so we do not agree with the cross-appellees that the action was prematurely brought. See *Security Bank* v. *Davis,* 215 Ark. 874, 224 S.W. 2d 25; *Smiley* v. *Thomas,* 220 Ark. 116, 246 S.W. 2d 419; Ark. Stat. Ann. § 27.1134.1 (Supp. 1975).

The judgment of the circuit court is affirmed on direct appeal as to the plaintiff-appellants and reversed and remanded for the entry of a judgment in favor of appellant Babe Fletcher consistent with this opinion. The judgment of the circuit court on the third party complaint is reversed on cross-appeal and the cause is remanded with directions to reinstate the third party complaint.

HARRIS, C.J., and JONES and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. The majority somewhat syllogistically reasons that since the testator gave alternative contingent remainders under paragraph three of his will then it follows that Asbury Fletcher had to survive the life tenant before his interest under paragraph three could pass by descent to his children. At page six of the majority opinion, they state "the clear language of the will required that Asbury Fletcher survive his daughter Barbara Jean before any estate vested in him." Both suppositions are erroneous. The will of I. N. Fletcher, in so far as here pertinent provides:

"KNOW ALL MEN BY THESE PRESENTS:

That I, I. N. Fletcher, of Craighead County, Arkansas, being of sound mind and disposing memory and above the age of twenty-one years, do hereby make, publish and declare this to be my last will and testament, and do hereby revoke all other Wills or codicils thereto heretofore by me made, that is to say:

1. I direct that as soon after my death as practicable all of my just debts, including burial expense be paid.

2. I here devise to my son, Asbury Fletcher, in fee simple, the following described real estate situated in Craighead County, Arkansas, to-wit:

The Southwest Quarter (SW¼) of the Northeast Quarter (NE¼) Section Eight (8), Township Fourteen (14), North, Range Six (6) East and also the South Three (3) acres of the Northwest Quarter (NW¼) of the Northeast Quarter (NE¼) of said Section Eight (8).

3. I devise and bequeath to my granddaughter, Barbara Jean Fletcher, for and during her natural life, then to the heirs of her body, if any, and if not then to Asbury Fletcher his heirs and assigns, the following described real estate situated in Craighead County, Arkansas, to-wit:

All that part of the West Half of the Southeast Quarter (SE¼) of Section Five (5), Township Fourteen (14) North, Range Six (6) East which lies South of Thompson Creek Drainage Ditch containing approximately Eighteen (18) acres and Twenty (20) acres in the Northwest Quarter (NW¼) of the Northeast Quarter (NE¼) of Section Eight (8), Township Fourteen (14) North, Range Six (6) East bounded on the West by the west line of said Northwest Quarter (NW¼) of Northeast Quarter (NE¼) of Section Eight (8) and on the South by the North line of the three (3) acre tract described in Paragraph number two (2).

4. I hereby devise to my son Babe Fletcher, in fee simple, the following described real estate situated in Craighead County, Arkansas, to-wit:

All that part of the North Half (N ½) of the Northeast Quarter (NE ¼) of Section Eight (8), Township Fourteen (14) North, Range Six (6) East of which I am the owner at the date of this Will, except that portion devised to Barbara Jean Fletcher under paragraph three (3).

Said North Half (N ½) of Northeast Quarter (NE ¼) of said Section Eight (8) is an Eighty (80) acre tract of which I originally owned Seventy-eight (78) acres, a Mr. Gipson now owns one and one-half (1 ½) acres and Charles McDuffee Three (3) acres, leaving Seventy-three and a half (73 ½) acres, more or less, of which I am the owner, but of which I have devised Twenty (20) acres to my Granddaughter Barbara Jean Fletcher as shown above. I also devise to my son Babe Fletcher the fractional North Half (N ½) of Northwest Quarter (NW ¼), Section Nine (9) containing Thirty-three and ninety hundredths (33.90) acres, more or less, and the North four and Sixty-five hundredths (4.65) acres of the Southwest Quarter (SW ¼) of the Northwest Quarter (NW ¼) of said Section Nine (9), both in Township Fourteen (14) North, Range Six (6) East.

5. I hereby bequeath to my daughter, Mattie Velma McDuffee, the sum of Three Thousand and No/100 ($3,000.00) Dollars.

6. It is intended and I so direct that if at my death any liens exist upon any of the real estate herein devised, then that said liens be released and discharged by payment of the amounts owing so that the title in fee simple, free and clear of all encumbrance will vest in the devisees; and that such payments be made by my Executors out of the residue of my estate.

7. After payment of all specific bequests and devises

herein, I hereby devise and bequeath the entire residue of my estate, real, personal, or mixed to my two sons Asbury Fletcher and Babe Fletcher in equal parts.

. . . ”

That the intention of the testator is of prime importance in determining the rights of the parties under the provisions of a will can be seen in *Cox* v. *Danehower,* 211 Ark. 696, 202 S.W. 2d 200 (1947), cited and relied upon by the majority, which states:

"At the outset we are confronted with the fact that an interpretation of only one item of a will is sought by the parties and the whole will is not before us. The entire will is not set forth in the pleadings and does not appear in the record. One of the cardinal rules in the construction of wills is that it is the court's duty to ascertain the intent of a testator, and in doing so such intent is not to be determined by one clause only, but must be gathered from a full consideration of the entire will. In the case at bar, however, the parties seem willing to assume that a consideration of the other portions of the will would not aid their respective contentions, and are content to rest their case upon the devise above quoted. Acting upon this assumption, we proceed to determine whether the language of this devise alone supports the conclusion reached by the Chancellor."

When we remember that Barbara Jean Fletcher is the daughter of Asbury Fletcher, it is at once obvious to me that the testator wanted the land given to Barbara Jean to go back to Asbury if she should die without heirs of her body. There is nothing in any clause of the will that requires Asbury to survive Barbara Jean. Any assertion by the majority to the contrary is unsupported by provisions of the will.

There is nothing in *Wise* v. *Craig,* 216 Ark. 144, 226 S.W. 2d 347 (1949), that supports the majority view that Asbury must survive his daughter. The will in the *Craig* case specifically provided what would happen if the remaindermen did not survive the life tenant, in the following words:

> "In case any of my said nephews and nieces are dead at the time of the death of my daughter, Sallie, then the descendants of such deceased devisee shall take such share as would have gone to such nephew or niece if living."

The real issue in the instant case is whether the interest of Asbury Fletcher is inheritable since he did not survive the life tenant. I think there is no question that it is. In L. Sims and A. Smith, *The Law of Future Interests,* § 135 (2d ed. 1956), in a discussion on whether survivorship is a condition precedent, it is stated:

> "In a large number of cases in which the discussion proceeds as if the problem were merely whether the remainder is vested or contingent, the real question involved is simply whether there is a requirement that a certain devisee must survive until his interest becomes possessory; it being conceded that he has not so survived. In many of such cases the whole discussion of the distinction is irrelevant, because exactly the same result would be reached if the remainder in question were treated as contingent or as vested subject to complete defeasance on the death of the remainderman before the termination of the particular estate. Thus, in a limitation to A for life and then to B and his heirs if he survives A, the interest of B ends when he predeceases A, whether we classify the interest as contingent or as vested subject to complete defeasance. More dangerous are the cases in which it does make a difference how the interest is classified and in which the courts get involved in a peculiar mingling of fallacies concerning the meaning of the terms 'vested' and 'contingent.' On the one hand, these cases seem to assume that if there is no condition precedent of survivorship, the remainder is necessarily vested (thus purporting to give the term 'vested' the meaning: 'not subject to a condition precedent of survivorship'). On the other hand, they assume that all contingent remainders are necessarily subject to a condition precedent of survivorship. Both of these assumptions are invalid and do not conform to the normal meanings of the two terms in question. As to the

first, it is true that if there is a condition precedent of survivorship, the remainder in question is contingent, but the converse is not true. If survivorship is not a requisite, it does not follow that the remainder is vested. A remainder may be subject to some other condition precedent which renders it contingent, even though there is no condition that the devisee must survive until the termination of the preceding estate.

The second assumption — that all contingent remainders are subject to an implied condition of survivorship — is equally invalid. While it is true that the courts will sometimes imply a condition precedent of survivorship (and thus make the remainder contingent), it is also true that some contingent remainders are inheritable, and thus capable of transmission even though the holder thereof does not survive until the interest becomes possessory.

These cases represent an area of the law which engenders confusion because of the narrow meaning which is given to the term 'vested' and because of a failure to appreciate that the question of whether there is a requirement of survivorship is not synonymous with the question of whether the remainder is vested or contingent."

In 23 Am. Jur. 2d *Descent and Distribution* § 32 (1965), we find, contrary to the suggestion of the majority opinion in the second full paragraph on page six, the following statement:

"As a general rule, a contingent remainder passes under the statute of descent and distribution. Similarly, in the case of an executory interest, where the fee is limited to commence in the future upon a contingency, the fee passes, until the contingency happens, in the usual course of descent to the heirs at law.

. . .

. . . While contingent interests have sometimes been considered as subject to an implied condition of the

donee surviving the particular estate, seemingly just because they are subject to *some* condition precedent, this is not logically sound where the contingency refers only to the time of enjoyment and possession and not to the time for the title to pass or for the determination of the person taking."

That it was not necessary for Asbury Fletcher to survive the life tenant is eminently supported by *Black* v. *Todd,* 121 S.C. 243, 113 S.E. 793 (1922). In that case the will devised the property to Corrinna Mystis Harris for life, the remainder to her children, if any, and if no children then to Mary Brown for life with remainder to her children, if any, and if none then to Samuel P. Black. Corrinna Mystis Harris outlived both Mary Brown and her children, all of whom died without issue. After the death of Corrinna Mystis Harris without children, the court held that a conveyance from the children of Mary Brown was valid as against the claims of Samuel P. Black.

For the reasons stated, I respectfully dissent.

HARRIS, C.J., and JONES, J., join in this dissent.