WILLIAM P. BULLOCK *v.* THE WATERMAN STREET BAPTIST SOCIETY.

A devise by a father to his son of certain real estate "during his natural life, and after him to his heirs forever," vests in the son an estate in fee-simple in the devised property, under the rule in Shelley's case; notwithstanding a subsequent clause in the will referring to all the gifts and bequests to the testator's children, the above inclusive, provides, that "all the before-mentioned gifts and bequests are for life only, and then to go to their several heirs forever, share and share alike, except, &c."

BILL IN EQUITY for the specific performance of a contract for the purchase of real estate. It appeared from the pleadings, the case being tried upon bill and answer, that on the 4th day of March, 1858, the defendants, through a committee authorized by vote, contracted in writing with the plaintiff to purchase of him his estate at the corner of Brown and Benevolent Streets, in the city of Providence, called the Sheldon House, for the sum of $12,000; $5,000 to be paid by a conveyance of their lot on Waterman Street, in said city, and $7,000 in cash, on the delivery of a valid deed of conveyance. In execution of his part of the contract, the plaintiff, it was admitted, duly tendered to the defendants a deed of said estate executed by him with covenants of warranty, and by his wife, in release of her dower, and demanded of them a conveyance of their Waterman Street lot and the payment of the $7,000; balance of the contract price. The defendants refused to go on with the contract, on the ground that the plaintiff had a life-estate only in the premises, and was therefore incapable of conveying to them the title stipulated in his contract. It further appeared, that the title of the plaintiff to the premises was derived under the will of his father—the late Richmond Bullock of Providence—and rested upon the two following clauses of his father's will:—

"*Third.* I give and bequeathe to my son, William Bullock, my

house and lot on Brown Street, where the said William now re-
sides, called the Sheldon House.   I also give and bequeathe to
him, the said William, all the houses, stores, and land between
South Main Street and South Water Street, called the Bucklin
estate, except those rooms in the front building, connected
with a tenement attached to the Eddy estate, adjoining north-
erly ; also a house and lot on John Street, called the Green
House, during his natural life, and after him to his heirs for-
ever."

The will then goes on to give to the said William certain
personal property, and to other children of the testator certain
real and personal property in the same form of words, and to
provide for the wife of the testator, and in the *seventh* clause
proceeds as follows :

" *Seventh.*  All the before-mentioned gifts and bequests are
for life only, and then to go to their several heirs forever, share
and share alike, except the household furniture given to my
wife, which is left to her entire disposal as she may think best ;
and my will and meaning is, that the dividends or income in
the one hundred and ninety-five shares of the capital stock of
the Roger Williams Bank, and the dividends or income of the
one hundred and eight shares of the Merchants' Bank, after
the decease of my wife, I give to my four children, say, William
P. Bullock, Jabez Bullock, Harriet Bullock Pearce, and Julia
Bullock, to be divided equally among them during their nat-
ural lives, and at the decease of either of my before-named
children, then one fourth of said shares or stock is to go to
their heirs forever, and so on until all of their respective shares
shall go to their respective heirs forever."

Upon the refusal of the defendants to accept his conveyance
of the title thus vested in him, the plaintiff filed this bill to com-
pel them to do so, and to convey to him the lot of land, and
to pay to him the cash balance of the consideration therefor,
named in the above contract, and, incidentally, to obtain a con-
struction of the above recited clauses of his father's will.

The case was submitted to the court upon the following
points and authorities :—

*James Tillinghast.*   The devise, contained in the will, clearly

vests in the complainants an absolute estate in fee in the property in question, within the rule in Shelly's case. 4 Kent, Com. (5th ed.) 214 *et seq.*

The general intent that the estate shall pass to the heirs of the ancestor, as heirs, must control any particular intention, unless such particular intention be so clearly expressed as to exclude the interpretation of the general words. *Jones* v. *Morgan,* 1 Bro. Ch. 206; *Poole* v. *Poole,* 2 Bos. & Pull. 620; *Jack* v. *Featherston,* 9 Bligh. (N. S.) 237; 2 Jarm. on Wills, (ed. 1845,) 302–304, &c. Words expressly negativing the continuance of the ancestor's estate beyond the period of its primary express limitation, will not exclude the rule. 2 Jarm. on Wills, 246, 247.

The added words in the seventh clause, " share and share alike," do not vary the rule; they would not even if the first devise gave an estate tail. *A fortiori,* they will not, where it gives an estate in fee-simple, and where, as with us, the heirs will necessarily take, share and share alike. *Jesson* v. *Wright,* 2 Bligh. 1; *Atkinson* v. *Featherston,* 1 Barn. & Ad. 944; 2 Jarm. on Wills, 285, 286.

Ames, C. J. It is clear that the plaintiff took, under the will of his father, an estate in fee-simple, in the lot contracted to be purchased of him by the defendants, and as thus their only defence to this bill fails, that they must be enforced to perform their contract of purchase. The testator evidently intended that the plaintiff should have only a life estate in this lot. This appears from the express terms limiting the estate—" during his natural life "—in the third clause of the will, devising it to the plaintiff, as well as from the beginning of the seventh clause, in which the testator declares, that " all the before-named gifts and bequests" to his children, including of course that to the plaintiff, " are for life only, and then to go to their several heirs forever, share and share alike, except, &c." But then, again, it is equally evident, from the words in which he disposes of the remainder in fee in this lot, " and after him to his heirs forever," and " then to go to their several heirs forever, share and share alike," in the same clauses, that the testator designed that this remainder should vest, not in any particular persons, as purchasers,

designated as the heirs of his son, but in the class of persons, to take in succession, who might stand in the relation of heirs to his son at the time of his death—using the word " heirs " as a *nomen collectivum*, for the whole line of the inheritable blood of his son.

No such difficulty from the use of the words " share and share alike " in the seventh clause of the will, arises here, in application to the word " heirs," considering our doctrine of partible inheritances, as was raised, though got over, in application to the words " heirs of the body," in *Jesson* v. *Wright*, 2 Bligh. 1, and *Doe* d. *Atkinson* v. *Featherston*, 1 Barn. & Ad. 944. The testator, in this clause, speaks, in general, of the gifts and bequests before made to his children, as for life only, and provides, that they are " then to go to their several heirs forever, share and share alike." As these heirs may, by our law, consist of several persons, the words, " share and share alike," are inserted for the purpose of directing that in such case they shall take equally, without at all implying that they are not to take in their character of *heirs*.

In such a condition of things, it is too well settled to be disputed, that by the well-known rule in Shelley's case, founded partly perhaps upon feudal reasons, and partly upon the broad common-law policy of rendering estates alienable by, and subject to the debts of, their owners, the particular intent, to create an estate for life, must yield to this more general intent and policy; and the word, " heirs," be construed to extend the estate of, and give a fee to, the proposed tenant for life. *Perrin* v. *Blake*, Hargrave, Law Tracts, 489, 551; *Doe* v. *Laming*, 2 Burr. 1100; *Doe* v. *Smith*, 7 T. R. 531; 4 Kent, Com. 214–229, and cases cited. This rule has been abrogated by our statute of wills (Rev. Stats. ch. 154, § 2) in application to devises of real estate, only in case of " a devise for life to any person and to the *children* or *issue* generally of such devisee in fee-simple," in which case the statute declares, that the devise " shall not vest a fee tail estate in the first devisee, but an estate for life only ; and the remainder shall, on his decease, vest in his children or issue generally, agreeably to the direction in such will." It is obvious from these words, as well as from the con-

text, that the statute is aimed at the rule only when, in the specified cases put, it had been construed to create an estate in fee tail in the first taker; and that by thus recognizing and repealing it in application to specified cases, it impliedly affirms and ratifies it in application to all others.

Let a decree be entered, that the defendants specifically perform their contract of purchase with the plaintiff as set forth in the bill, upon receiving from him a proper conveyance of the lot therein mentioned, free from all incumbrances; and unless otherwise agreed, let a master be appointed to settle the conveyance and attend to the execution of the decree.