## RANDOLPH v. READ.

### Opinion delivered May 21, 1917.

1. TRUSTS—ACTIVE TRUST.—A deed to certain lands to one F., trustee for certain parties, *held* under the facts to constitute an active trust.
2. DEEDS—CONSTRUCTION.—In construing deeds, full effect should be given to every clause, if possible, and they should be harmonized so as to give the intended effect to the deed as a whole.

Appeal from Crittenden Chancery Court; *Charles D. Frierson,* Chancellor; reversed.

*Hughes & Hughes,* of Memphis, Tenn., and *Coleman & Lewis,* for appellants.

1. The deed to Frazer, as trustee, vested in him the title in fee simple with absolute and unrestricted power to sell and convey. An express trust was created, and, of course, no implied trust could arise. The use was not executed by our statute, as it has no application. The beneficiaries looked upon Frazer as an active trustee with full authority to manage and control the estate, lease the lands and finally dispose of them and account to the beneficiaries only for the net proceeds, etc. This was not a mere passive trust, but an active trust. A new trust was created and contemplated, identical with the old, with the exception that the new beneficiaries in the new trust were confined to those named in the Frazer deed. The whole transaction, the apparent purpose of the parties, the necessities of the situation, the conduct of the parties and the acquiescence and conduct of the beneficiaries conclusively show that this was in the minds of all the parties to the Frazer deed. 67 Fed. 877.

2. The language of the granting clause of the deed shows that an active trust was contemplated. 1 Lewis on Trusts, Ch. 12; Perry on Trusts, § § 5, 298, 304, 312; 1 Warvelle on Vendors, § 78; Hill on Trustees, pp. 82, 229. Frazer had power to sell and convey the lands 81 Ark. 235, 243; Perry on Trusts (6 ed.), § § 764-6; 61 Kan. 593.

3. On the death of Frazer the legal title went to his heirs. 39 Cyc. 270; Perry on Trusts, § § 334-5. But the heirs held on the same trust as Frazer.

4. The deed from the heirs of Frazer to Randolph vested a fee simple title in him.

5. All the land except the north half, northwest quarter of section 13 was unimproved and unenclosed at the death of Frazer. No part of it was in the adverse possession of any one. The statute of limitations has vested in Randolph a complete title. 53 Ark. 359; 31 *Id.* 364; 52 *Id.* 132; 16 *Id.* 154; 24 *Id.* 556; 2 S. W. Rep. 466; 113 Ark. 497, 501.

6. Plaintiffs are barred by laches. 72 Ark. 101, 106; 103 *Id.* 58; 110 *Id.* 389; 102 *Id.* 59; 81 *Id.* 352, 432; 95 *Id.* 7, 17-18; 178 U. S. 205, 213, 215; 139 *Id.* 684, and others. See 120 Ark. 249; 72 *Id.* 101.

Read before this suit had virtually abandoned all claim of title. 105 Ark. 667; Tiedeman on Real Prop., § 739; 118 Ark. 516. Read is estopped. 105 Ark. 667; 118 *Id.* 516.

*A. B. Shafer* and *B. J. Semmes*, of Memphis, Tenn., for appellees.

1. Randolph, Read and the McNairy heirs were tenants in common, holding title to the Frazer lands in the amount of approximately one-third each and Randolph and Read were tenants in common of the land in section 15, each holding an undivided one-half interest. The deed to C. W. Frazer created an *express passive* trust. No powers were conveyed and he was a mere depository for the legal title. 3 Pomeroy (3 ed.), p. 1835; 39 Cyc. 222. The title vested immediately in the beneficiaries. When Frazer died, no title descended to his heirs except the undivided half interest in the J. H. Williams, interest, which was conveyed to Randolph. 39 Cyc. 209; 3 Sneed (Tenn.) 231; 55 Am. Dec. 52; 31 Ark. 682, 400; 39 Cyc. 351. Here the trust was a passive one, and no active duties were imposed by the deed. The lan-

guage is clear and simple, and there is no ambiguity.  17 Cyc. 613, 619, 666; 33 Ark. 150; 21 *Id.* 440.

2.  Briefly discuss the thirteen reasons or assignments why the deed should be construed as an active trust and contend that Frazer was merely a depository of the legal title.  39 Cyc. 223; 27 S. W. 45.

3.  The deed to Randolph from the Frazer heirs conveyed nothing but an undivided one-half interest in the J. H. Williams interest.

4.  The statute of limitations does not apply.  The McNairy heirs, Randolph and Read, were co-tenants.  31 Ark. 405; 99 *Id.* 446.  The burden of proving adverse possession was on Randolph.  43 Ark. 486; 61 *Id.* 464; 65 *Id.* 422; 82 *Id.* 51; 80 *Id.* 444; 42 *Id.* 289; 58 *Id.* 142, etc.

5.  Randolph can not plead laches.  81 Ark. 296. Nor limitation.  120 *Ib.* 249; 135 Mech. 235; 97 N. W. 157; 4 L. R. A. (N. S.) 573; 152 S. W. 286.

HUMPHREYS, J.  On the 23d day of January, 1915, a suit was brought in the Crittenden Chancery Court by the Standard Oil Company of Louisiana against Wm. M. Randolph *et al. to* quiet title to the following described real estate in Crittenden County, Arkansas:

"Beginning at a stake at sections 11, 12, 13 and 14 in township 6 north, and in range 9 east, running thence east along the north line of section 13, 77 feet to the point of intersection of that line with the west right-of-way line of the Kansas City, Fort Scott & Memphis Railroad Company (now called the Frisco lines); thence southeasterly along the said right-of-way 1,440 feet to the point of intersection of that line with the north right-of-way line of the St. Louis, Iron Mountain & Southern Railway Company; thence northwesterly along said right-of-way line 685 feet to an iron stake, being the point of intersection of that line with the west line of the northwest quarter of section 13, and thence along the said west line of section 13, 1,050 feet to the point of beginning, and contains 8.63 acres of land, more or less."

Appellees filed an answer and cross-bill in said suit, drawing in question about 1,500 acres of land of which the small tract above described is a part. The court ordered a severance and docketed the cross-bill as a separate suit in partition by appellees herein against Wm. M. Randolph, Rebecca E. Randolph and Edward Randolph, as to all the lands except 8.63 acres claimed by the Standard Oil Company. To this independent suit, Wm. M. Randolph, Rebecca E. Randolph and Edward Randolph filed separate answers. Theodore Read, one of the appellees, claimed title to about a one-third undivided interest in said real estate, as assignee of Ellen W. Lewis. Appellees, Gertrude Seegar, D. G. McNairy and Mrs. Carrie Hall, claimed about an undivided one-third interest therein, as heirs of Mary Jane McNairy, deceased. They claimed Wm. M. Randolph owned only about an undivided one-third interest with them as co-tenants.

The Randolphs claimed to be owners of all of said real estate except the west half, northeast quarter, west half, east half, northeast quarter, the northwest quarter and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres, in fee simple under deed made to them by the heirs and widow of C. W. Frazier, deceased, on the 12th day of September, 1906. By way of further defense, the Randolphs claimed that any and all right, title or interest ever owned by appellees is Wm. M. Randolph purchased several tax titles to parts of Wm. M. Randolph purchased several tax titles to parts of these lands, and the deeds made in pursuance thereto are set up in support of appellees' title. An accounting was sought by appellees involving rents, profits and taxes.

The chancellor heard the case upon the pleadings, evidence and master's report, upon which a decree was rendered in behalf of appellees for the respective interests claimed by them in all the lands except the north half of the northwest quarter in section 13. The bill was dismissed as to this tract. The report of the master was approved and confirmed. All parties appealed in so far

as the findings, orders and decrees of the court were adverse to them, and the cause is now before us for trial *de novo.*

Under the view taken by the court, it will be unnecessary to pass upon the effect of the tax deeds or to discuss the statute of limitations or doctrine of laches as applied to the facts in this case, and invoked by the Randolphs in support of their title to these lands. The construction this court has put upon the deeds in the chain of title under which the appellees claim is decisive of the case. In 1844, these lands, with others, were deeded by the owners at that time to Seth Wheatley and John S. Claybrook, as trustees, for the purpose of laying off upon them the town of Hopefield, Arkansas, and for the purpose of dividing and selling the lands. The respective interests held by the owners were evidenced by stock issued to them by the trustees of the Memphis & Hopefield Real Estate Stock Exchange, in pursuance of a general plan outlined in the deed. The plan provided for the private or public sale of the lands, when divided; that the stock might be used at par in the purchase thereof; that at the expiration of three years, all lands not then sold might be sold at a general sale. Much of the land, including the land in controversy in this suit, was not sold and was managed and controlled by the trustees under the deed of 1844, until the year 1888, at which time the deed was executed for the lands involved in this suit, except the west half, northeast quarter, west half, east half, northeast quarter, the northwest quarter, and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres, by John S. Claybrook and James H. Humphreys, as trustees by substitution, under the trust deed of 1844, and as commissioners under the decree rendered in the chancery court of Crittenden County, to C. W. Frazer, trustee, his heirs and assigns forever, subject to a lien retained to pay the debts of the Memphis & Hopefield Real Estate Stock Association, and to adjust any equities that might exist between the stockholders of said association. This

deed was made to Frazer, trustee, and his heirs and assigns in furtherance of a purchase of said lands in 1887 by the said Frazer, trustee. Frazer, as trustee, paid $18,894.30 in stock of said association for said lands, under the terms of the trust deed of 1844, and permitted under the decree in the above styled case. This deed recites that it was made by Claybrook and Humphreys under and by virtue of the powers contained in the trust deed of 1844 to them, and by the powers and authority conferred on them by the decree aforesaid. The deed on its face purports to convey to Frazer, as trustee, all the rights held or claimed by Claybrook and Wheatley under the conveyance to them. Another clause in the deed provides that the parties for whom Frazer, trustee, holds, are entitled to said lands in proportion, in certain amounts as compared to the whole consideration. The parties for whom Frazer held, as trustee, were named in the deed, and are Mc. H. Williams, Mary Jane McNairy and Ellen W. Lewis.

(1), Such interests as the appellees have in the lands involved in this suit, except the west half, northeast quarter, west half, east half, northeast quarter, the northwest quarter and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres, were acquired under this deed. If, by virtue of being the beneficiaries therein, they acquired both the legal and equitable estate, they became the owners thereof as tenants in common. If they did not acquire the legal title by said deed at the time of its execution, through the operation of the statute of uses, then they have never acquired it. In other words, their paper title is dependent upon whether the deed in question created an active or passive trust. It has been said that a passive trust "is one in which the trustee is a mere passive depositary of the property, with no active duties to perform," and that an active trust "is one which imposes upon the trustee the duty of taking active measures in the execution of the trust." A discussion of the distinction between these

classes of trusts will be found in 39 Cyc., page 30, and citations there given in support of the text. Again, in speaking of passive trusts, on page 222, it is said: "At most, the trustee has but a momentary seizin to serve the use executed by transferring the legal title to the beneficiary named, and the whole legal and equitable estate is merged and vests immediately and directly in the beneficiary." If Frazer, under the terms of the deed, was a passive trustee only, or a mere conduit through whom title passed, then the entire estate, both legal and equitable, passed *ipso facto* to the appellees. But, if Frazer was an active trustee, or the deed created an active trust in Frazer and his heirs, then the fee simple title passed to him, and upon his death to his heirs, and if the deed of the 12th day of September, 1906, is broad enough to convey a fee simple title, the widow and heirs of C. W. Frazer, by said deed, passed a fee simple title in said lands to Wm. M. Randolph on that date.

In order to ascertain the intention of the parties as to the character of the estate conveyed by the Claybrook-Humphreys deed to Frazer, it must be construed in connection with the other trust deed of 1844 to which it refers; the circumstances under which it was executed; the situation of the parties; the condition of the lands; and the terms of the deed.

The deed of 1844 created an active trust in unequivocal terms. The beneficiaries in the deed to Frazer, as in the deed of 1844, lived a great distance from the lands, and the same necessity existed for an active trustee in the one instance as in the other. The lands in litigation in this suit were almost unsalable on account of being under several feet of water at the time each deed was executed. Only a small portion of the land was revenue bearing, therefore, in order to bear the necessary burden incident to carrying the land as an investment, it was as necessary at the time the Frazer deed was executed, as when the original trust deed was executed, to have an active trus-

tee to protect and sell the timber and parts of the land when possible.

Looking to the terms of the deed alone, we find references made in the Frazer deed to the deed of 1844; that it contained a statement to the effect that Frazer, as trustee, was to hold the lands for the beneficiaries in proportion of certain amounts to the whole consideration, instead of a definite and fixed interest in kind in the land; that a lien was retained in the Frazer deed to liquidate, if necessary, any indebtedness of the Memphis & Hopefield Real Estate Stock Association, and to adjust any equities between the stockholders in said association. In other words, the deed to Frazer by the trustees, in the original deed, was conditional on the payment of the indebtedness and adjustment of the equities amongst the stockholders, growing out of the administration of the trustees under the active trust created by the deed of 1844; that instead of conveying to Frazer, trustee, for the beneficiaries and their heirs and assigns, the deed provided that C. W. Frazer, trustee, and his heirs and assigns were to have and to hold the lands forever, subject to the condition aforesaid.

The indubitable earmarks on the face of the deed itself seem to point unerringly to the creation of an active trust. We think the deed should be read in connection with the deed of 1844, and, when read together in the light of the administration of the original trust covering a period of 44 years and in the light of the situation of the parties and condition of the lands, the conclusion is inevitable that the intention of the parties in the Frazer deed was to create a continuing, active trust with substituted trustee to sell the lands, when possible, and apportion the net proceeds among the beneficiaries according to their several interests.

We have contented ourselves with stating the distinction between active and passive trusts, as we do not understand any difference exists between counsel in this regard. The serious question in dealing with trusts is to

properly classify the case in hand, and, as usual, the difficult question in this case has been to ascertain definitely the class to which it belongs. However, after a careful reading of the deed and evidence, we are of opinion that the trust created by the Frazer deed comes clearly within the class of active trusts.

The court, in placing this construction upon the deed, has at least followed the construction placed upon it by the parties themselves. For years, they permitted Frazer to perform the duties of an active trustee. He rented and leased the lands, paid the taxes, sold the timber and parcels of the land whenever the opportunity presented itself. The conduct of the parties from the moment the deed was executed until the widow and heirs of C. W. Frazer conveyed to Wm. M. Randolph, were wholly inconsistent with the contention of appellees that the deed from J. S. Claybrook and J. H. Humphreys, as trustees and commissioners, to C. W. Frazer, as trustee, for J. H. Williams, Mc. H. Williams, Mrs. Mary Jane McNairy and Ellen W. Lewis, created an express passive trust only. The acts and the conduct of the parties are perfectly consistent with the construction placed upon the deed by the court.

(2) Having construed the deed, constituting the common source of title of all the parties to this suit, as creating an active trust, the only remaining question to be determined is whether the deed of September 12, 1906, from the widow and heirs of C. W. Frazer to Wm. M. Randolph, was broad enough to convey him a fee simple title in said real estate, except the west half, northeast quarter, west half, east half, northeast quarter, the northwest quarter and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres. It is contended by appellees that the only interest intended to be conveyed by this deed to Wm. M. Randolph was an undivided one-half interest in the J. H. Williams interest, which had been previously conveyed to C. W. Frazer by Randolph in 1890. We are unable to agree with learned

counsel in their contention. In the granting clause of that deed, all the right, title, claim and interest in and to lands involved in this litigation, except the west half, northeast quarter, west half, east half, northeast quarter, the northwest quarter and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres, was conveyed by the widow and heirs of Chas. W. Frazer, and in another portion of the deed, all the right, title, claim and interest John H. Williams had at any time in all the other lands, property and rights of the Memphis & Hopefield Real Estate Association, not named before in the deed, or that he may have had in a certain 105-acre tract of land, was conveyed. It seems to us that all the interest that the heirs of C. W. Frazer obtained from any source in the lands in litigation, except the west half, northeast quarter, west half, east half, northeast quarter, the northwest quarter and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres, were conveyed in fee simple by this deed; no reservations whatever were made. In construing deeds, full effect should be given to every clause, if possible, and harmonized so as to give the intended effect to the deed as a whole. *Fletcher* v. *Lyon*, 93 Ark. 5; *McDill* v. *Meyer*, 94 Ark. 615; *Dempsey* v. *Davis*, 98 Ark. 570.

Theodore Read obtained title to the following described real estate, towit: West half, northeast quarter, west half, east half, northeast quarter, the northwest quarter and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres, from Claybrook and Wheatley and afterward deeded an undivided one-half interest therein to W. M. Randolph. Theodore Read, therefore, still owns an undivided one-half interest in said 353-acre tract. This interest has not been divested out of him by conveyance or adverse possession.

It follows that insofar as the findings and decree of the chancellor were adverse to the interests of appellants, except as to the west half, northeast quarter, west half, east half, northeast quarter, the northwest quarter

and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres, must be reversed. The decree is therefore reversed except as to the west half, northeast quarter, west half, east half, northeast quarter, the northwest quarter and frl. southwest quarter, section 15, township 6 north, range 9 east, containing 353 acres, and the cause is remanded with instructions to enter a decree in accordance with this opinion.

McCULLOCH, C. J., (dissenting). No doubt can exist as to the differences, so clearly stated in the opinion of the majority, between an active and a passive trust and the effect, with respect thereto, of the English Statute of Uses, which came to us as a part of the common law. Our conflicting views arise only as to the application of the law to the facts of this case in determining whether or not the deed to C. W. Frazer created an active trust. My view is that it did not. The only reason given in the argument why the deed in question did not on its face create merely a passive trust is the use of the words "heirs and assigns" in the deed, but they were merely used as words of inheritance and do not have the effect of enlarging the estate created. *Watson* v. *Wolff-Goldman Realty Co.,* 95 Ark. 18; *Barker* v. *Greenwood,* 4 Mees. & W. 421.

An express trust resting in parol can not be engrafted on a deed conveying an absolute title. *McDonald* v. *Hooker,* 57 Ark. 632. This rule applies with like force to an attempt to enlarge a trust from a passive to an active one, for the effect of a deed, which, on its face attempts to create merely a passive trust, is to convey the absolute title to the beneficiary named in the deed, and an effort to engraft an active trust by parol would violate the established rule of evidence the same as if the language of the deed did not create a passive trust. The deed to Frazer was manifestly not intended as a continuance of the old deed of the year 1844, for it did not include the same parties as beneficiaries. The old deed, in express words, created an active trust, and the fact that

a different form of deed was used in conveying the land
to Frazer indicated the absence of any intention to con-
tinue the active trust in conformity with the original
plan. It seems to me, therefore, that a consideration of
the old deed in connection with the new one executed by
the court commissioners to Frazer weakens, rather than
strengthens, the contention that there was an intention
to create an active trust.

The deed to Frazer was executed by commissioners
pursuant to orders of the chancery court in the suit of
*Harrison et al.* v. *Williams,* instituted in the year 1883, to
wind up the old trust. The effect of the decree in that
case was to wind up the trust, and not to continue it. The
undisposed of lands were sold under the decree, and
those involved in the present controversy were purchased
and paid for by the stock owned by the beneficiaries
named in the Frazer deed, which specified the separate
interest of each of the beneficiaries.

I fail to see any reason for declaring that the deed to
Frazer was executed in continuance of an active trust
created by the old deed. It contains none of the pro-
visions of the old deed with respect to the creation of a
trust and does not impose any duties or confer any
powers upon the trustee. The case presents an instance
of the creation of a passive trust which falls directly
within the law governing them. Nor is the effect of the
deed changed by what the trustee did under it. If merely
a passive trust was created, the legal title went immedi-
ately to the beneficiaries named in the deed, and nothing
done thereafter could reinvest title in the trustee. What
he did thereafter in the way of paying taxes and look-
ing after the land was merely as agent of the owners, and
not as trustee in the deed, for the deed clothed him with
no authority to do anything with the land.

It is said by some of the text writers that the pur-
pose of the English lawmakers in enacting the Statute
of Uses was to prohibit all uses and trusts, either active
or passive, so as to prevent the concealment of real own-

ership behind the trust, but that the courts of that day were reluctant to give full force to the statute because of the prevailing custom of adopting that mode of holding the title to lands, and limited the operation of the statute to passive trusts. It seems to me that this court has, in the present instance, refused to apply the settled rules of construction of such deeds in order to effectuate what is conceived to be the purpose of the parties in creating a form of trust which permitted the title to vest in the trustee.

But if it be considered that the deed to Frazer created an active trust so as to vest the legal title in him as trustee, it does not follow that the deed executed by his heirs to Randolph conveyed the trust estate. It did not purport to do so. No reference to the trust was made in the deed, but on the contrary it purported to convey only the interests of the heirs. It was a quitclaim and the widow of C. W. Frazer, and the executrix of his estate, joined in the deed. Frazer owned an interest in the land, which the heirs inherited, and the words of grant are to be construed as being referable to the interest actually owned, and not to the trust estate, to which no reference was made.

I am unable, therefor, to discover any grounds for holding that the title passed to Mr. Randolph under the deed executed to him by the Frazer heirs. Other questions in the case are not discussed in the opinion of the majority, and I refrain from doing so, but my conclusion of the whole case is that the decree of the chancellor should be affirmed.

Mr. Justice WOOD holds the same views.