BISHOP *v.* WILLIAMS.

4-9984                                    255 S. W. 2d 171

Opinion delivered February 16, 1953.

Rehearing denied March 16, 1953.

*Virgil R. Moncrief* and *John W. Moncrief,* for appellant.

*Arthur R. Macom* and *W. A. Leach,* for appellee.

GEORGE ROSE SMITH, J. This is an ejectment suit brought by the appellees to recover possession of a tract of land in Arkansas County. In our view the decisive issue is whether a deed executed by W. E. Meacham in 1916 vested the fee simple in the two grantees or merely gave them life estates with remainder to their heirs. The trial court, finding that life tenancies existed, entered judgment for the plaintiffs.

In 1916 Meacham conveyed ninety-five acres to two brothers, C. H. and C. F. Williams, the granting clause containing this language: "to have and to hold to them during their natural lives with remainder after their death to their heirs, the term heirs herein used is a

term of purchase and not of limitations." In the following year the Williams brothers divided the land by an exchange of deeds, C. H. receiving the tract now in controversy. C. H. conveyed this tract to R. C. Wills in 1926, and by later conveyances that title has passed to the appellants. C. H. Williams died in 1950, and his heirs now seek to recover the land upon the theory that C. H. had a mere life estate which terminated upon his death.

It is at once apparent that, standing alone, the grant to the Williams brothers "during their natural lives with remainder after their death to their heirs" would undeniably convey the fee simple by operation of the Rule in Shelley's Case. This fact is readily admitted by the appellees, but they insist that since the Rule necessarily involves the construction of the term "heirs" as a word of limitation rather than as one of purchase, the principle is rendered inapplicable by Meacham's recital that he used the term in the latter sense. By this recital, the appellees say, "the grantor has clearly shown his intention . . . to convey a life estate in the lands."

This argument is fallacious in that it assumes that the Rule in Shelley's Case is a rule of construction, designed to assist the court in determining the grantor's intention. But the contrary is true; the Rule is one of law, to be applied without regard to the conveyor's intention. Indeed, it is safe to say that in almost every instance the Rule has the effect of creating a fee when the grantor or testator meant to bring into being some other estate. For example, in the leading case of *Hardage* v. *Stroope,* 58 Ark. 303, 24 S. W. 490, the deed was to Tennessee M. Carroll for life and then to her bodily heirs in fee, and if she left no bodily heirs then according to the law of descent and distribution. Of course, the grantors did not mean for Mrs. Carroll to take the fee title; but, following a rule that has been in force for some six centuries, we held that to be the effect of their conveyance. Our cases have announced the doctrine so frequently that it has become a rule of property which we are not free to disregard.

We know of no jurisdiction in which the grantor's intention is permitted to defeat the application of the Rule. As Powell writes in his admirable work on Real Property, § 379, "the Rule in Shelley's Case is a rule of law which applies despite the conveyor's most explicit manifestation of his desire that it not apply." Illustrative cases included those in which the grantor, after having conveyed to A for life with remainder to his heirs, attempts to qualify his action by stating his intention to create a life estate only in the first taker. In such instances it is uniformly held that the grantee takes the fee simple. *Fowler* v. *Black,* 136 Ill. 363, 26 N. E. 596, 11 L. R. A. 670; *Daniels* v. *Dingman,* 140 Iowa 386, 118 N. W. 373; *Edgerton* v. *Harrison,* 230 N. C. 158, 52 S. E. 2d 357; *Bullock* v. *Waterman St. Baptist Soc.,* 5 R. I. 273. The testator could hardly have been more emphatic than he was in *Lauer* v. *Hoffman,* 241 Pa. 315, 88 A. 496, 47 L. R. A., N. S. 676, where, after using words that came within the Rule, he added that "in no event whatever shall the fee simple vest [in my daughter]." Nevertheless it did.

In the case at bar it is plain that Meacham, after having created a fee simple by reason of the Rule in Shelley's Case, could not have rendered that action ineffective by adding that he intended for the Williams brothers to be mere life tenants. Nor could he achieve that result in a more roundabout way by asserting that the term "heirs" was used as a word of purchase. It has been pointed out that the Rule applies "even though the conveyor specifically provides . . . that the heirs shall take as purchasers." Rest., Property, § 312, Comment *k.* We adopted that view in the *Hardage* case, *supra,* when we approved this familiar language from the opinion in *Doebler's Appeal,* 64 Pa. St. 9: "It [the Rule] declares inexorably that where the ancestor takes a preceding freehold by the same instrument, a remainder shall not be limited to the heirs . . . as purchasers. If given as an immediate remainder after the freehold, it shall vest as an executed estate of inheritance in the ancestor; if immediately after some other interposed estate, then it shall vest in him as a remainder.

Wherever this is so, it is not possible for the testator to prevent this legal consequence by any declaration, no matter how plain, of a contrary intention.''

We conclude that the effect of Meacham's deed was to convey the fee title to C. F. and C. H. Williams as tenants in common. They were then free to divide the property between themselves. Title to the tract allotted to C. H. has now passed to these appellants, who are clearly entitled to retain possession.

Reversed and dismissed.

Ed. F. McFaddin, Justice (dissenting). The germane portions of the deed here involved read as follows:

''Know All Men By These Presents: That I, W. E. Meacham, a single man, for and in consideration of the sum of ($2,500) twenty-five hundred dollars, to me in hand paid by H. J. Williams, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto C. H. Williams and C. F. Williams, *to have and to hold to them during their natural lives with remainder after their death to their heirs, the term heirs herein used is a term of purchase and not of limitations,* the following lands lying in the county of Arkansas, State of Arkansas, to-wit: The Frl. N½ of NE¼, right bank of Bayou, and SW¼ NE¼ Section Seventeen (17), Township Four (4) South, Range Six (6) West, Northern District, Arkansas County, Arkansas.

''To have and to hold the same unto the said C. H. Williams and C. F. Williams *as above set forth* and unto their heirs and assigns forever, and all appurtenances thereunto belonging.'' (Italics my own.)

The majority opinion holds that the italicized words are without effect, because ''the rule in Shelley's case applies''; and I cannot agree with that holding. For some time our Court has held that the intention of the parties, as ascertained from all the language of the deed, should govern in the construction of the instrument, rather than any hard and fast formulae anciently established. *Luther* v. *Patman,* 200 Ark. 853, 141 S. W. 2d 42;

*Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215; *Coffelt* v. *Decatur School District No. 17,* 208 S. W. 2d 1; *McBride* v. *Conyers,* 212 Ark. 1034, 208 S. W. 2d 1006. Here the grantor (in actuality the payor of the consideration, H. J. Williams, father of the life tenants) used an apt phrase to clearly and definitely express his intent to create a life estate only in the two sons of H. J. Williams, namely, C. H. and C. F. Williams.

In the italicized portion of the deed above, there are these words:

". . . the term heirs herein used is a term of purchase and not of limitations, . . ."

Thus, the deed itself described what was meant by the words "heirs"; and every time the word "heirs" appears in the deed, it means that the heirs of C. H. Williams and C. F. Williams take by purchase and not by limitations. The grantor used legal words to have a legal meaning, and I think we should give some effect to them: but the majority opinion is that when the "Rule in Shelley's case" enters, then the intent of a party goes out the window. I still believe that we should give effect to what was the clear intent of H. J. Williams in having this deed made as it was in 1916.

My views find expression in the opinion of this Court in the case of *Eversmeyer* v. *McCollum,* 171 Ark. 117, 283 S. W. 379. In that case it was claimed that the rule in Shelley's case applied, but Justice HART used this language:

"The rule in Shelley's case is applicable only when the language used in the conveyance creates a limitation to the heirs of the grantor in general. If the limitation is to the heirs of the body of the grantee, the rule in Shelley's case does not apply."

Therefore, I dissent from the holding of the majority on the point at issue.