Marynell Milburn SUTTON, and Herbert COLLINS and John Rogers COLLINS, Trustees *v.* Margaret F. MILBURN, Executrix of the Estate of J.B. Milburn, Jr.

85-317                                        711 S.W.2d 808

Supreme Court of Arkansas
Opinion delivered July 7, 1986
[Rehearing denied September 15, 1986.]

*Wright, Lindsey & Jennings*, and *Bailey, Trimble & Sellars*, for appellant.

*Perroni & Rauls, P.A.*, by: *Stanley D. Rauls*, for appellee.

GEORGE ROSE SMITH, Justice. This is a petition for the construction of a will. The testator, John Collins, was engaged for many years with his brother Herbert in managing property and estates. John died in Little Rock on January 4, 1965, a few days before his 64th birthday. He was survived by his wife Blanche, 58, his mother, Norrie Collins, 87, his brother Herbert, 55, and three sisters, Mona Collins Milburn, 62, Avanelle Collins Rogers, 60, and Anne Beth Collins Nanson, 53. The bulk of the estate was left in trust to two trustees, the testator's brother Herbert and their nephew, John Collins Rogers. As a result of their management, the conversion of real estate into more productive investments, and an increase in the value of a block of corporate stock, the worth of the trust property had increased substantially when the trustees filed the present petition in 1985.

The Collins trust was to last at least 20 years, with the income being distributed to the testator's mother, his widow, and his heirs at law. On the 20th anniversary of the testator's death the trustees filed this petition to have the estate reopened for the determination of heirship. The question presented by the petition is: Should the testator's "heirs at law," who are to receive the trust property at the expiration of the trust, be determined as of the date of the testator's death in 1965 or as of the date of the death of the surviving life beneficiary, Blanche (who died on June 8, 1985, while the petition was pending in the probate court)?

The probate judge chose a third date, that of the death of the testator's mother on June 12, 1967. That choice was based on a legal theory that avoids incongruities when one of two or more life beneficiaries is also the testator's sole heir, as John Collins's mother would have been under Act 52 of 1933, § 1, which was in force at his death. For the theory adopted by the trial judge, see Restatement of Property, § 308, Comment *k* (1940); *Delaware Trust Co.* v. *Delaware Trust Co.*, 33 Del. Ch. 135, 91 A.2d 44, 38

ALR 2d 318 (1952). We need not weigh the trial court's theory, because the view that the heirship is to be determined as of the date of the testator's death treats the main issue more directly and reaches the same result on the facts of this case.

Before turning to the provisions of the Collins will, we note that the distribution of only one eighth of the trust property is affected by this dispute about heirship. The testator's brother and two of his sisters were still living at Blanche's death; each receives one fourth under any view. The third sister, however, died on May 5, 1967, survived by two children, J.B. Milburn, Jr. and the appellant Marynell Milburn Sutton. If the heirs are determined as of the testator's death in 1965, then upon the death of the testator's sole heir, his mother, the one-eighth interest now in question would have passed by her will to J.B. Milburn, Jr., whose mother had predeceased her own mother, Norrie. That vested one eighth would then have passed by J.B. Jr.'s will to his widow, the appellee Margaret F. Milburn. On the other hand, if the heirs are determined as of Blanche's death in 1985, J.B. Milburn, Jr. had died three months before Blanche's death, without descendants; so Mona Milburn's entire one-fourth share would have vested in her daughter, the appellant Marynell Milburn Sutton.

John Collins's will was executed on January 27, 1964, about a year before he died from a heart attack on January 4, 1965, and seven weeks after he married his second wife, Blanche. The will consists of ten numbered paragraphs, after an introductory sentence. All the paragraphs are short except the seventh, in which the trust is created. We quote that paragraph and summarize the others.

First: [The usual direction that debts be paid.]

Second: [A devise of a home to the testator's wife, Blanche, plus a legacy of $5,000, with minor details.]

Third: [A gift of $10,000 to a church.]

Fourth: [A legacy of $2,500 each to the testator's brother and three sisters, who are named.]

Fifth: [A legacy of $1,000 each to the testator's seven nephews and nieces, if living, otherwise to their "heirs at law."]

Sixth: [Legacies to three domestic employees.]

Seventh: The remainder of the rest and residue of my Estate I give, devise and bequeath to Herbert Collins and John Collins Rogers in trust with all the right, title and power in handling same that I now possess for the uses and purposes set out hereinbelow.

Out of the net income my Executors and/or Trustees shall pay to my wife, Blanche H. Collins, the sum of $700.00 cash per month beginning immediately after my death and for the duration of her lifetime, and additional amounts out of the income of my Estate which my Trustees may deem necessary or in the case of illness or any unforeseen contingency if, in their opinion the $700.00 monthly payment does not appear to be adequate. In the event the current year's income is not sufficient for the monthly payment and additional amounts which my Trustees are authorized to pay to my wife, then my Trustees shall pay same from prior years accumulated, undistributed income, if any, otherwise, out of the corpus of my Estate for whatever amount may be required in excess of income. If my wife remarries, the monthly payments and additional amounts shall be terminated at that time.

Out of the net income my Executors and/or Trustees are to pay to my Mother, Mrs. Norrie M. Collins, the sum of $200.00 cash per month beginning immediately after my death and for the duration of her lifetime, as well as any additional amounts which my Trustees deem are necessary or in case of illness or any unforseen contingency. In the event there is not sufficient income from the current year or prior years accumulated, undistributed income, such additional amounts as may be needed shall be paid from the corpus of my Estate.

Whatever net income is remaining at the end of each calendar year, after the payment of amounts which are to be paid from income, shall be invested and after the accumulated, undistributed net income amounts to a total of $20,000.00, all the net income not needed for my wife Blanche H. Collins, and my Mother, Mrs. Norrie M.

Collins, under the foregoing provisions shall be distributed share and share alike to my heirs at law, with the further provision that if part of said $20,000.00 is used for the purposes set forth, a like amount shall be retained out of the succeeding year's net income so that the accumulated, undistributed net income of $20,000.00 shall be maintained before resuming payments of net income to my heirs at law.

After the death of my wife or her remarriage, my Trustees are authorized to use out of the corpus of my Estate $5,000.00 for each of the children of my nieces and nephews now living or that may be born hereafter, for education purposes after finishing High School, to be paid out as in the discretion of my Trustees is advisable.

After a ten year period following my death has expired, or the death or remarriage of my wife, whichever is later, my Trustees shall determine how much of the corpus of my Estate, including prior years accumulated, undistributed net income on hand, if any, will be needed for payment of bequests which I provide be paid from income and the amounts needed for educational purposes for the children of my nieces and nephews, and out of the corpus in excess of the amounts reserved, my Trustees are authorized to distribute one-half of the remaining corpus of my Estate, share and share alike per stirpes to my heirs at law. The Trustees shall take sufficient time for making said distribution as would be for the best interest of the Estate, as it might be necessary to sell some things that cannot be distributed in kind in order to make the distribution. Partial distributions can be made.

After a twenty year period following my death has expired, or the death or remarriage of my wife, whichever is later, this Trust shall ipso facto cease and whatever remains shall go share and share alike per stirpes to my heirs at law, my Trustees to have whatever time is deemed for the best interest of my Estate to dispose of those assets necessary to make an equal distribution. Before making the distribution after twenty years has expired following my death or the death or remarriage of my wife, whichever

is later, my Trustees shall retain sufficient liquid assets or income producing real estate to provide for educational purposes for the children of my nieces and nephews and/or any amounts which are to be paid under the provisions of this will or any codicil to same.

Eighth: [Directions for the liquidation of Collins & Company, the partnership with Herbert Collins.]

Ninth: [All beneficiaries to receive their bequests without deduction for estate taxes.]

Tenth: [Appointment of Herbert Collins and John Collins as executors and trustees, with the survivor to serve alone upon the death of either.]

The rival lawyers support their arguments by stressing distinctly different aspects of the problem. Counsel for the appellee, arguing for the determination of heirship as of the date of John Collins's death, relies upon two familiar rules: One, the law favors the early vesting of estates when a choice is to be made, and two, the word "heirs" is a legal term that refers both by the common law and by statute to those who are entitled by law to inherit property from a person who dies intestate. The substance of that definition of "heir" is contained in our statute of descent and distribution, Ark. Stat. Ann. § 61-131 (Repl. 1971), and in our Probate Code. Section 62-2003(j). We have often determined heirship as of the date of a pertinent death, but we have not allowed that principle to override the clear intention of a testator. The appellee cites *Bowman* v. *Phillips*, 260 Ark. 496, 542 S.W.2d 740 (1976), as being closely on point. That opinion, however, construed a deed, not a will. Wills were involved in *Wallace* v. *Wallace*, 179 Ark. 30, 13 S.W.2d 810 (1929), and *Griffin* v. *Moon*, 238 Ark. 692, 384 S.W.2d 243 (1964). In *Wallace* the will seemed to create a trust for the management of farmland for 25 years, but the court held that the will did not create a trust nor even a remainder. Consequently title vested at the death of the testator, whose devisees could immediately convey a clear title. In *Griffin* the testator left his farm to his wife, "with the remainder thereof on her decease or marriage, to my said children and their children, respectively, share and share alike." The testator's children had no children at his death. The court stressed the rule of early vesting in holding that title vested in the testator's

children at his death. As usual, however, the court qualified the principle favoring early vesting by adding "in the absence of a contrary intention of the testator appearing from the will."

Historically, the emphasis on early vesting and on a fixed construction of the word "heirs" arose as part of the developing law of real property in feudal times and thereafter. Those common law rules governing the creation and conveyance of estates in real property are surely the most technical that have managed to survive to the present. For instance, a deed to a grantee and his heirs conveys nothing to the heirs; the grantee takes the fee. Again, a deed to a grantee for life with remainder to his heirs conveys the fee simple to the grantee, by the application of the Rule in Shelley's Case. In fact, that rule is so inflexible that, in commenting on a Pennsylvania case, we noted that the devisee took the fee simple under the Rule in Shelley's Case even though the testator had said in his will that "in no event whatever shall the fee simple vest" in that devisee. But it did, the Rule being applied despite the testator's contrary intention. *Bishop* v. *Williams*, 221 Ark. 617, 255 S.W.2d 171 (1953).

We are not questioning the wisdom of the strict principles applied in the law of real property. It is essential that the law governing the ownership of land be absolutely certain, regardless of logic. When a person buys a home, the law must be able to assure him that his title will be upheld by the courts, if challenged. The surest way yet found to reach that goal is to use language that through centuries has attained a rigid meaning. Early vesting also has a practical advantage, in the avoidance of contingent remainders that would make it impossible for any person or combination of persons to convey good title until the contingency occurred.

Counsel for the appellants, in presenting their side of the case, urge the court to give effect to John Collins's intent, as reflected by the language of his will, rather than to the rigid rules of the common law. They have the stronger position. In some instances, of course, the common law rules give effect to the testator's intent; there is no problem. In the case at bar, for example, by the fifth paragraph of the will the testator left a legacy of $1,000 to each of his seven nephews and nieces "if living, otherwise to their heirs at law," the legacies to be payable out of the corpus of the estate "as soon after my death as my Executors

deem it convenient to do so." There can be no reasonable doubt about the heirship defined by that language.

        When, however, the common law rules of construction, as distinguished from the rules of law, would bring about a result manifestly contrary to the testator's intention, it is the intention that must prevail. We doubt if our first statement of this principle, made in 1840, was too broad: "The object of the courts of all countries, in the construction of wills, is to arrive at the true and real intention of the testator. To this end all the rules upon the subject necessarily tend, and upon it they are all made to turn." *Moody* v. *Walker*, 3 Ark. 147, 185 (1840). A companion rule, though not so broad in its application, was quoted from a New York case: "[I]f there is a gift of the principal, unconnected with the time of payment, then the legacy vests; if there is no gift except at the time of payment, then it does not vest until the time arrives; and if it never arrives, the legacy is lapsed." P. 186. The *Moody* opinion is still the law.

The Collins will provides, in the final paragraph under Seventh: "After a twenty year period following my death has expired, or the death or remarriage of my wife, whichever is later, this Trust shall ipso facto cease to exist and whatever remains shall go share and share alike to my heirs at law," with the trustees having ample time to make an equal distribution. Later in the paragraph the testator directs that the trustees retain sufficient assets to provide for the specified educational purposes of his grandnephews and grandnieces.

Herbert Collins was the only witness below. John Collins was not a lawyer, but he had been the trust officer of a bank that closed, which led to his being named as trustee or executor for estates, guardianships, and trusteeships. After John's second marriage, in November, 1963, he started discussing with Herbert what he planned to do about his estate. The will was dictated by John, in Herbert's presence, during several sessions in the month of January. It was evidently prepared with great care and certainly expressed the testator's desires with remarkable clarity.

The testator's primary concerns were for his mother, whom he had supported since he was 22, when his father died, and for his wife. The corpus of the trust was made available for their support. Apart from gifts to the church and to domestic employees, all the

rest of the principal and income of the estate goes to or for the benefit of the testator's immediate family or their descendants. For at least 20 years the trust property is to be preserved for the benefit of the family. Perhaps long after the expiration of the 20 years part of the estate may still be kept in trust for the education of younger members of the family.

A determination of heirship as of the date of the testator's death would have no advantage, as far as the accomplishment of his intentions is concerned. With respect to real property, for which the rule of early vesting was created, there are often advantages in making the owner's interest in the property readily transferable. No such advantage is discernible here. To the contrary, John Collins would no doubt have been strongly opposed to any thought that a beneficiary's interest in the principal or income of the trust could be sold to outsiders, with obvious possibilities of resulting dissension. Similarly, there is no inference to be drawn from the testamentary plan that the testator meant for the ownership of any part of his estate to stray outside the family if one or more of the beneficiaries were to die without descendants before the expiration of the 20 years. Yet that is what could and did happen if the heirship is determined as of the testator's death rather than at a time when a determination becomes necessary. After studying the case we are firmly convinced that John Collins's fundamental purposes in creating the trust can best be carried out by fixing the determination of heirship as of the date of the death of Blanche Collins.

Reversed and remanded for the entry of a decree conforming to this opinion.

PURTLE, J., not participating.