Nancy Ann SMITH, et al. *v.* William G. WRIGHT, et al.

89-197                                              779 S.W.2d 177

Supreme Court of Arkansas
Opinion delivered November 13, 1989

418

*Smith & Smith*, by: *Norman M. Smith*, for appellants.

*McMillan, Turner & McCorkle*, by: *F. Thomas Curry*, for appellee William G. Wright.

*Martin, Trumbo & Sterling*, by: *Brent Sterling*, for appellees Betty Jo Moorman, et al.

TOM GLAZE, Justice. This case involves the interpretation of John J. Hardin's will, which was admitted into probate after his death on January 27, 1933. The will created two trusts, but our case concerns the interpretation of only the second trust known as

the Buren Hardin Trust. The corpus of this trust consisted of approximately 1,325 acres of land. According to the terms of John Hardin's will, the trust was to continue for 18 years after the death of the last survivor of one of his sons, Buren Hardin, and two of Buren's children, Richard and Bettie Jo Hardin. Presently, the trust is still in existence since both Richard and Bettie are alive. During Buren Hardin's lifetime, he had the right to control and rent the land in the trust and to collect the rents and proceeds from the sale of timber from the land. Under the terms of the will, Buren received these annual returns of the land for as long as he lived. In other words, Buren had a life estate in the annual returns of the land contained in the corpus of the trust. Buren Hardin died on March 22, 1987. He was survived by his second wife, Martha Gentry Hardin, four children (Richard Hardin, Bettie Jo Hardin, Marietta Shephard, and Nancy Smith), grandchildren and great-grandchildren. Clara Hardin, Buren's first wife and the mother of his children, had died in 1982.

The issues in this case involve the provisions of the will devising the annual income from the property after Buren's death and the fee simple interest in the land itself after the termination of the trust. The appellants, who are three of Buren's children, Nancy, Richard, and Marietta and their adult children, contend that the Rule in Shelley's Case or, in the alternative, the Statute of Uses applies to the terms of the will. Therefore, they contend that when Buren died intestate, he owned a fee title in the land in the trust, which was inherited by his four children, subject to his widow's dower rights. The fourth child, Bettie Jo Hardin, the trustee, and the guardian *ad litem* for the minor children are the appellees. Upon a motion by all of the parties for judgment on the pleadings, the chancellor found that the Rule in Shelley's Case and the Statute of Uses were not applicable to the will. On appeal, the appellants raise five points of error. We find no error, and therefore affirm.

The following are the provisions of the will that are in issue:

> TWENTY-FIRST: Upon the death of Buren . . . , then, thereafter, until the expiration of the entire period fixed for the continuance of the SECOND TRUST, the annual returns of the SECOND TRUST shall be owned and enjoyed by and paid, share and share alike to the survivors,

or survivor, of the widow and the legitimate descendant, or descendants, of Buren, so that the widow and each legitimate descendant (living when any annual returns from the lands of the second trust are gathered or due) shall share equally in such annual returns of the SECOND TRUST as are gathered and/or are due in his (or her) life time, and as often as a legitimate descendant of Buren is born (after the death of Buren) the number of shares (into which such annual returns of the SECOND TRUST are to be divided shall be increased by one, so that each such new born shall have a share.

TWENTY-SECOND: At the expiration of the period fixed . . . for the continuance of the SECOND TRUST, the lands of the SECOND TRUST . . . shall, from and after the expiration of the period fixed for the continuance of the SECOND TRUST, be owned absolutely forever in fee by the survivors, or survivor, of the widow and of the legitimate descendant, or descendants, of said Buren living at the time fixed for the expiration of the continuance of the SECOND TRUST, and if there shall be more than one such survivor taking under the provisions of this paragraph, then the lands of the SECOND TRUST shall be divided among such survivors, not per stirpes, but share and share alike in the same manner and with a like share going to each as would be the case if each such survivors were the only child or children of one person and such one person had died intestate at the date of the expiration of the SECOND TRUST the owner in fee of said lands of the SECOND TRUST. If there shall be only one such survivor taking under this paragraph, then such sole survivor taking under this paragraph shall own absolutely in fee all of the lands of the SECOND TRUST.

Under these provisions, the beneficiaries are to receive the annual income from the properties until the trust expires, which will occur eighteen (18) years after the last to survive between Bettie and Richard has died. In other words, the will provides for a life estate interest *per autre vie* plus a term of years. After the trust expires, the beneficiaries have a remainder interest in fee simple. Paragraphs twenty-three and twenty-four provide that the survivors of Buren's four brothers and their legitimate

descendants shall inherit the interest in the event of the possibility of there being no widow and no legitimate descendant alive at the time of Buren's death or at the expiration of the trust.

Arkansas is one of the few states that continues to recognize the Rule in Shelley's case, which provides the following: "If in a conveyance or a will a freehold estate is given to a person and in the same conveyance or will a remainder is limited to the heirs of the body of that person, that person should take both the freehold estate and the remainder." *See Hardage* v. *Stroope*, 58 Ark. 303, 24 S.W. 490 (1893). The Rule in Shelley's case is a rule of law, and we will apply it whenever the language of the conveyance fits under the rule without regard to the conveyor's intention. *See, e.g., Bishop* v. *Williams*, 221 Ark. 617, 255 S.W.2d 171 (1953). Before the Rule in Shelley's case applies, the following three requirements must all be met: 1) there must be a freehold estate given to the ancestor; 2) by the same instrument a remainder must be limited to the heirs or to the heirs of the body of the ancestor; and 3) the freehold and the remainder must be of the same quality, that is, both legal or both equitable. C.J. Moynihan, *Introduction to the Law of Real Property* Ch. 6, § 1 (1962). In the present case, the chancellor found that the second and third requirements were not met.

Under the second requirement, a remainder is limited under the Rule in Shelley's case, when the language used to describe it is construed to refer to the persons who as heirs or heirs of the body would inherit the property of the designated person on his or her death intestate. Restatement (Second) of Property § 30.1(g) (1988). In our case, the chancellor found that the remaindermen were not limited to the heirs or heirs of the body of Buren Hardin for two reasons: 1) his widow was named as one of the remaindermen, and 2) Buren's heirs did not become fixed at the time of his death.[1] We agree.

Although the appellants concede that the widow was a remainderman in the annual income interest, they contend that

---

[1] We note the appellant's argument that the use of the word widow was meant to refer to Buren's first wife and mother of his children. Even if the language of the will supported that contention, which we hold it does not, such a determination is irrelevant to the issue on appeal — whether the Rule in Shelley's case and the Statute of Uses applies to this case.

the chancellor's findings are wrong because "nowhere in the second trust is it said that the remainder in fee shall be shared by the widow." As set out previously, the following language was used to convey the fee simple interest: "the lands of the second trust . . . be owned absolutely forever in fee by the survivors, or survivor, of the widow and of the legitimate descendant, descendants of said Buren living at the time fixed for the expiration of the continuance of the second trust." From our reading of this language, we conclude that clearly the widow, if she was living at the time the trust expired, was a remainderman along with Buren's legitimate descendants. The word, survivor, was used to specify that the members of the class must be alive to take an interest.

Language contained in other provisions of the will corroborates this interpretation. First, the language used in the fee simple conveyance mirrors the language conveying an interest in the annual income until the expiration of the trust. The appellants concede that this annual income provision conveys an interest to the widow. Further, paragraph 24 clearly provides that Buren's brothers and his brothers' legitimate descendants shall take the fee simple interest only where every legitimate descendant of Buren is dead *and* the widow of Buren is dead.

Because the widow was a remainderman in fee simple interest, the Rule in Shelley's case simply is inapplicable. In other words, when Buren died, his widow was not an heir under Arkansas law. *See* Ark. Code Ann. § 28-9-214(1) (1987) (establishes heritable estate of an intestate to commence with the children of the intestate and descendants of each child of intestate who may have predeceased the intestate) and Ark. Code Ann. § 28-9-202(2) (1987) (defines a person's descendants to mean his lineal descendants); *see also Sanders* v. *Taylor*, 193 Ark. 1095, 104 S.W.2d 797 (1937) (court held widow does not take as the heir of her husband). Thus, because the remainder interest was not limited to Buren's heirs, the Rule in Shelley's case cannot apply.

In addition, we agree with the chancellor's finding that the second requirement was not met because Buren's heirs were not fixed at the time of his death. In the fee simple conveyance, those in a class of beneficiaries consisting of Buren's widow and

his legitimate descendants who are alive at the time of the expiration of the trust will share in the fee simple interest. The Rule in Shelley's case is not applicable if the heirs are to be determined as of some other time than the death of the ancestor. 1 *American Law of Property* § 4.43 (A.J. Casner ed. 1974). In the present case, the beneficiaries of the fee simple interest clearly are to be determined at the end of the trust and not upon Buren's death. Accordingly, we again affirm the chancellor's finding that the second requirement of the Rule in Shelley's case has not been met.[2]

Further, we find no merit in the appellant's alternative argument that the chancellor erred in finding that the Statute of Uses is inapplicable. Like the Rule in Shelley's case, the Statute of Uses was made part of Arkansas law by the adoption of the English common law. Ark. Code Ann. § 1-2-119 (1987). The Statute of Uses provides that where one person stands seised of land to the use of another person that other person shall be seised of a like estate as he had in the use. C.J. Moynihan, *Introduction to the Law of Property* Ch.8, § 5 (1962). In other words, in cases where the Statute is applicable, its effect is to convert an equitable or use estate into a corresponding legal estate. *Id.* The Statute of Uses does not apply to an active trust. Restatement (Second) of Trusts § 67 (1959); *see also Randolph* v. *Read*, 129 Ark. 485, 196 S.W. 133 (1917). In *Randolph*, this court defined an active and passive trust as follows: "a passive trust is one in which the trustee is a mere passive depositary of the property, with no active duties to perform, and . . . an active trust is one which imposes upon the trustee the duty of taking active measures in the execution of the trust."

In our case, the trustee was much more than a mere conduit through which legal title passed. The trustee had several active duties that included the following: distributing the annual income of the property, appointing a new person to manage the property after Buren's death, protecting the property

---

[2] Since all three requirements of the Rule in Shelley's case must be met before it applies, we need not address the appellant's argument that the chancellor erred in finding that the freehold and the remainder were not of the same quality and therefore the third requirement was not met.

by taking over the control of the property in the event the person managing became delinquent in paying taxes, and executing mineral leases on the property. In sum, John Hardin did not set up the trust merely to transfer the title of the property. Hence, since the trust was an active trust, the Statute of Uses does not apply. Further, we note that the Statute of Uses generally applies to trusts which are created by inter vivos transactions. *See* Restatement (Second) of Trusts § 68 (1959). Of course, in the present case, the trust was created not by a inter vivos transaction, but a will.

In the last two points of error, the appellants argue that the trial court erred in not applying the Doctrines of Merger and Restraint of Alienation. Since the appellants' arguments under these points rely on this court finding that the Rule in Shelley's case applies, we need not address these arguments.

For the reasons stated above, we affirm the trial court.