Brandon J. Harrison, Judge, dissenting.
Did the circuit court erroneously conclude that Wanda Boling Fisher's interest in her grandfather's testamentary trust vested in her brother, rather than her estate, when she died in 2014? I believe the court did err, so I respectfully dissent from the majority's decision to affirm (even as modified).
I.
I agree with my colleagues that H.E. Boling gave his wife Eunice a life estate with the following words in section 4 of the trust:
During the lifetime of my wife, Eunice Boling, the Trustee shall pay all income which is distributed annually to my wife, Eunice Boling, and upon her death, it will be distributed as follows: 75% of the income to my son, Charles Fred Boling, and 25% to my step-daughter, Wilma Leola East. The Trustee shall divide the Trust property into two portions, 75% in one portion and 25% in the other portion. This division may consist of undivided interest in the land and may also be operated jointly with each other.
I can also agree that H.E. Boling clearly identified his son Charles as a beneficiary and distributee of the trust; Charles was given a 75 percent interest in the trust income and the trust corpus after Eunice died. In fact, the parties essentially agreed during oral argument before this court that Charles possessed only a life estate under the trust's terms. Consequently, the dispute centers on the next generation -meaning who takes what and for how long after Charles Boling died.
The Who. When H.E. signed the will creating the testamentary trust in 1967, his son Charles had two children-Wanda Faye Boling (age 5) and Eric Ray Boling (age 2). This fact is recited in section 2 of the trust. Moreover, the parties do not dispute that Charles had fathered only two children-Wanda and Eric-by the time he died. And both children were still living when Charles died.
Throughout the trust document, H.E. Boling added to his description of Charles the words "and of his two children," "for the children or descendants," and "his children ... per stirpes."[1] In my view, H.E., as the settlor, consistently identified Charles's children as being the class of persons who were to receive a 75 percent interest in the property after Charles died.
*599 There is support for this viewpoint. See Restatement (Third) of Property (Wills & Don. Trans.) § 14.3 (2011) (when settlor describes the beneficiaries as "descendants" of a designated person, the primary meaning of that class-gift term is determined by substituting in the word "children"). No one disputes that Eric and Wanda are the only two beneficiaries that comprise the now-closed class of "Charles's children." As I read the trust document, H.E.'s intent to convey property to Charles's children, Wanda and Eric, is communicated throughout, from start to finish.
The What. The primary asset in this trust appears to be several hundred acres of farmland that produces income from the crops grown on it. After Eunice died, annual income distributions from the trust were made to H.E.'s son, Charles Boling, and to Charles Boling's stepsister, Wilma East. The income stream was distributed in unequal amounts-75 percent of the net income was sent to Charles, and 25 percent of the net income was sent to Wilma. After Charles died in 2001, it appears that Wanda and Eric each received 37.5 percent of the net income (which together equaled Charles's percentage share that he received while alive); Wilma East still received 25 percent. After Wanda died in 2014, Eric received 75 percent of the net income; Wilma still received 25 percent. This is a rough approximation based on the limited summary-judgment record before us. As far as the record reveals, there has never been a distribution of principal from the trust corpus.
The How. As with most legal instruments, a trust's words matter-a lot. In this case, the trust is not clear on what H.E. Boling wanted to do with his property once the current circumstance presented itself. We must therefore do the best we can to discern his intent and do so in accordance with established legal principles. See Murphy v. Morris , 200 Ark. 932, 141 S.W.2d 518 (1940) (applying the same interpretation principles whether we are interpreting a deed, a will, or a trust); Covenant Presbytery v. First Baptist Church , 2016 Ark. 138, 489 S.W.3d 153 (discerning settlor's intent is fundamental). Absent an illegality, constitutional problem, or statutory prohibition, Arkansas trust drafters may put whatever terms a settlor desires into a trust instrument. See, e.g. , Ark. Code Ann. § 28-73-105 (Repl. 2012) (noting some limited exceptions). But care must be taken with the words used if a drafter wants to avoid default rules and other legal presumptions that are found in Arkansas's statutes and case law. See, e.g. , Mitchell v. Mitchell , 208 Ark. 478, 187 S.W.2d 163 (estates tail are converted into an estate for life in the first taker, remainder in fee simple absolute in persons who would have succeeded to the estate tail on the first taker's death); see also Lynn Foster, The Arkansas Trust Code: Good Law for Arkansas , 27 U. Ark. Little Rock L. Rev. 191 (2005).
In the testamentary trust at issue here, H.E. Boling split up his bundle of sticks, so to speak, and transferred them to two primary groups of people: the trustees and the beneficiaries. He also further divided up various aspects of property ownership between the beneficiaries-including the right to use; the right to exclude; the right to the income; and the right to security (meaning property cannot be taken away from the holder). This litigation exists because H.E. divided his bundle of sticks using language that was inconsistent, and the inconsistency created an ambiguous trust.
As the majority has already stated, the trust provides in section 6 that when either Charles or Wilma dies, or both of them, "the Trustee shall operate and manage the Trust for the benefit of the children or *600 descendants of my son Charles and my step-daughter Wilma[.]" And as we have established, unless H.E. used clear language to the contrary, then his use of the word "children" and his use of the word "descendants" means the same thing: Eric and Wanda.
Under section 6(a) the trustee is directed to pay "all the current net income" to Eric and Wanda if they have turned twenty-one years old. This section was triggered because Eric and Wanda turned twenty-one, and their father Charles had died. In other words, after 2001, the trust was being managed for the benefit of Wanda and Eric.
In tension with 6(a), however, is section 6(b):
Notwithstanding anything in this instrument to the contrary, if any descendant of a deceased child of Charles and/or Wilma is under the age of twenty-one years when the Trustee is directed to distribute to him any portion of the principal of the Trust property, his portion shall immediately vest in the interest [sic] in him indefeasibly , but the Trustee may in its discretion withhold possession of it[.]"
Subsection (b) creates tension because it is the only section in the testamentary trust that addresses any great-grandchildren (that is, any children that Eric or Wanda may have had). Cotrustees Eric and Wilma now argue that subsection (b) bars any nondescendants (meaning appellant Charles Fisher, Wanda's widower) from taking under the trust. Subsection (b) also creates an ambiguity regarding whether the remainder of the trust principal vests when the trust terminates or at some earlier point in time.
Section 5 of the trust also creates some communication problems when read with other provisions in the trust. Section 5 states:
After my wife's death, and after the death of both Charles Fred Boling and Wilma Leola East, and after the four grandchildren have all become 21 years of age, the Trustee shall terminate the Trusts. In such event the property in the Charles Fred Boling Trust shall be divided and delivered to his children share and share alike, per stirpes.
The majority reads this section as erecting three contingencies for terminating the trust that prevent vesting of the trust principal in any person or class of persons. Maybe. But an equally reasonable view is that section 5 tells the trustee when to wind up and terminate the trust. In section 6(c), the settlor (H.E.) identifies alternative, or contingent, beneficiaries, which are his heirs at law,[2] in the unlikely event that "all other children die and leave no descendants surviving[.]"
The Duration. Recall that the primary question in this case is what must be done with Wanda's property interests under the trust now that she has died. In Arkansas, there is a statutory presumption that a settlor intends to give his or her property in fee simple absolute unless there is a clear and unambiguous expression of an intention to shorten the duration of the estate. E.g. , Walt v. Bevis , 242 Ark. 644, 654, 414 S.W.2d 863, 870 (1967) ("Where an estate in land is created by will, it will be deemed to be an estate in fee simple if a less estate is not clearly indicated."). Moreover, Arkansas law favors the earlier date of indefeasibility, even if it causes the asset to pass out of the conveyor's blood line.
*601 Cox v. Danehower , 211 Ark. 696, 202 S.W.2d 200 (1947). Put differently, the "law favors the early vesting of estates, and that, if a deed or will is susceptible of a dual construction, by one of which the estate becomes vested and by the other it remains contingent, the former construction will be adopted." Hurst v. Hilderbrandt , 178 Ark. 337, 340, 10 S.W.2d 491, 492 (1928).
A settlor or testator may, of course, draft a trust and expressly avoid these (and other) presumptions that are embodied in Arkansas's statutes and case law, if the trust clearly does so. But H.E. failed to use clear and unequivocal language. And that is why I have turned to the established presumptions. Having applied the presumptions that a settlor intends a fee estate, not a life estate, and that an interest is vested, not contingent, the correct interpretation is the one that appellant Charles Fisher has urged: "After her death, Wanda's portion of the trust is now an asset of her probate estate."
I agree with him for several reasons. First, the terms "children" and "descendants" do not limit the duration of the estate that was given to Eric or Wanda. Williams v. Williams , 167 Ark. 348, 268 S.W. 364 (1925) (under long-established Arkansas law, unless expressly contradicted, the term "children" is a word of purchase not of limitation).[3] Second, H.E.'s use of the term "per stirpes" does not limit the duration of the property interest given to Wanda or any other grandchild under the trust terms. This is because "per stirpes" is a term of representation, not of purchase or limitation. See Stokan v. Estate of Cann , 100 Ark. App. 216, 266 S.W.3d 210 (2007). Though Fisher relies on cases from other jurisdictions to make this point, Arkansas cases amply support the proposition that in this case's circumstances, the use of "per stirpes" does not limit the duration of the estate given. E.g. , Stokan, supra. No language connected with per stirpes indicates a survival requirement, an age requirement, or that the grandchildren or great-grandchildren must be "then living" when the trust property is distributed. See Restatement (Third) of Property (Wills & Don. Trans.) §§ 26.3, 26.6 (2011) (collecting cases). That H.E. specified a contingent disposition if all his grandchildren should die without themselves having had children squares with the presumption in Arkansas that the settlor intended a complete disposition of his property. See , e.g. , Galloway v. Darby , 105 Ark. 558, 151 S.W. 1014 (1912) (noting presumption against partial intestacy in the construction of wills).
II.
I am persuaded that H.E. intended that income would be paid to his wife Eunice for her life, and after she died, to Charles and Wilma for their lives and the remainder to their [Charles's and Wilma's] children. In lawspeak, when Eunice died in 1999, Wanda became a qualified beneficiary under the trust, in part, because she would receive a distribution of trust income if Charles died. See Ark. Code Ann. § 28-73-103(14) (Repl. 2012) (defining qualified beneficiary). Moreover, Wanda would receive a distribution of trust principal if Wilma (in addition to Charles) died, making her a "first-line" remaindermen. See Ark. Code Ann. § 28-73-103(14) (a qualified beneficiary is one who "would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.").
The bottom line is that in 2014, Wanda was a current recipient of trust income and *602 possessed that present right in fee simple absolute. Wanda also had a present right to future possession of the farmland, in fee simple absolute, when she died in 2014. In other words, she had a vested remainder. And when she died, she held her vested remainder as a tenant in common with Eric and Wilma's children.[4]
The majority never specifically identifies what interest Eric and Wanda received under the trust terms and for how long they will hold it. I presume that they read the trust as granting Wanda a life estate so that any interest she had in the trust income or land ended when she died. This interpretation requires the majority to read words into the trust that are simply not there. No language shows that H.E. intended for Charles's children-H.E.'s grandchildren-to hold a mere life estate in the property. Moreover, that interpretation runs aground on the fee-simple presumption to the contrary. Ark. Code Ann. § 18-12-105 (Repl. 2015) (abrogating common-law presumption of a life estate); Smith v. Estate of Smith , 293 Ark. 32, 732 S.W.2d 154 (1987) (applying presumption of fee-simple conveyance). A court may, under certain circumstances,[5] reform the terms of a trust to conform to the settlor's intentions; but we should not essentially rewrite a troublesome document in a way that contravenes established legal presumptions.
The majority writes, "[I]t is abundantly clear that H.E.'s overriding intent was to establish an income stream to provide for the needs of direct descendants during their lifetimes and to ultimately distribute the assets to his then living direct descendants." Maj. Op. at 597. Yet in doing so they must overlook and do nothing to square that stated intent with the fact that Wilma East and her children are not H.E.'s direct descendants.
The majority also concludes that no person has a vested interest in the trust principal. They believe H.E. intended to create life estates for Wanda, Eric, and Wilma in the trust income and trust corpus, with contingent remainders in Charles Boling's direct lineal descendants[6] that are living when the final distribution takes place. Again, Arkansas law favors the contrary, meaning the law favors vested interests above contingent ones, and it favors them vesting at the earliest possible time. The majority, however, assumes that the beneficiaries' future interests in the trust principal are contingent for one reason-that Wilma is still alive.
III.
A final point about the right to security and the right to express how a person wants his or her property to be distributed after death. Nothing in this testamentary trust restrains any beneficiary from voluntarily or involuntarily transferring his or her beneficiary's interest. No trust term requires a beneficiary (male or female) to have a child as a condition to retain any property interest. The trust is silent on what happens, if anything, when Wanda dies or when any other grandchild of H.E. dies. (The trust only speaks to circumstances in which every grandchild dies and *603 leaves no surviving children.) No statute, common-law principle, or trust term prevents Wanda's interest from being devisable or inheritable. We, unfortunately, do not have anything in this record relating to Wanda's estate-no will, no writing, no testimony-that might help us know how she wanted her property to be distributed after she died. But the consequence of today's decision is that an appellate court can read an ambiguous and self-contradictory trust document to mean that a childless woman's property interest (like Wanda's) must "revert" to her brother and not according to her wishes (whatever they may have been), although the trust itself makes no such directive and in contravention of presumptions that appear in Arkansas's statutes and case law.
Given the ambiguous trust and the law, I cannot agree that the trust leaves Wanda's estate with nothing and gives Eric everything. Like any other property interest that a deceased person has, Wanda's present interest in the trust income and corpus when she died means that the property should pass through her will or by the law of intestate succession. Ark. Code Ann. § 28-9-206(a) (Repl. 2012).
The summary-judgment order stating that "under the wording of the Trust vesting of the trust occurred at the death of Wanda Faye Boling Fisher and the proper disposition of Wanda's share of the trust during administration is that her portion vested in Eric Boling" is mistaken and should therefore be reversed. The case should then be remanded for further proceedings, which should include the circuit court's adjudication of Fisher's complaint against Wilma and Eric.

The term per stirpes means "proportionately divided between beneficiaries according to their deceased ancestor's share." Black's Law Dictionary (10th ed. 2014).

By "heirs at law" I mean persons who would take according to the law of intestate succession in Arkansas.

Words of purchase are the words the settlor used to designate the person who is to receive the interest. Ryan v. Ryan , 138 Ark. 362, 211 S.W. 183 (1919). Words of limitation are what a settlor used to describe the extent or duration of the interest given. Id.

From the record, it appears that the cotrustees have operated the residuary trust as one trust and not separate trusts or trust shares.

Arkansas Code Annotated section 28-73-415 (Repl. 2012) states, "A court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement."

By "direct lineal descendants" I mean a blood relative in the direct line of descent like H.E.'s children, grandchildren, and great-grandchildren.